UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| SERGIO TIJERINA-SALAZAR, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | No. 4:19-cv-74 |
| v. | § | |
| | § | Civil Action |
| FERMIN VENEGAS, FERMIN VENEGAS | § | |
| SHEARING, INC., and VENEGAS | § | Jury Demanded |
| CONTRACTORS, INC., | § | |
| | § | |
| *Defendants*. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

1.  Plaintiff Sergio Tijerina-Salazar ("Mr. Tijerina") is a Mexican citizen who worked for many years in Texas under the federal agricultural visa program known as "H-2A." *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(a). Defendants are an individual and businesses who disregarded the federal immigration laws that govern access to foreign H-2A workers, including wages, working conditions, work types, and work sites. Although Defendants repeatedly swore to the federal government that Mr. Tijerina would perform agricultural work, they exclusively employed Mr. Tijerina as a heavy equipment mechanic. Defendants required Mr. Tijerina to work 12 or more hours each day, seven days each week, and paid him as little as $80.00 per day. Defendants exploited Mr. Tijerina as part of their concerted and longstanding effort to subvert federal restrictions on access to foreign labor. Mr. Tijerina seeks damages for numerous breaches of contract and violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

## JURISDICTION AND VENUE

2.   This court has jurisdiction over this action pursuant to:

    a.   28 U.S.C. § 1331 (Federal Question);

    b.   28 U.S.C. § 1337 (Interstate Commerce);

    c.   28 U.S.C. § 1367(a) (Supplemental Jurisdiction); and

    d.   29 U.S.C. § 216(b) (FLSA).

3.   Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2).

## PARTIES

4.   Plaintiff Sergio Tijerina-Salazar is an individual and citizen of Mexico who is domiciled in Jimenez, Coahuila, Mexico.

5.   Defendant Fermin Venegas is an individual who is domiciled in Fort Stockton, Texas, and does business under the names "Fermin Venegas Shearing, Inc.," "Venegas Shearing," and "Venegas Contractors, Inc.," and "Venegas Contractors," among others.  He may be served with process at 4327 N. FM 1053, Fort Stockton, Texas 79735.

6.   Defendant Fermin Venegas Shearing, Inc., is or was a corporation formed and operating under the laws of the State of Texas.  It may be served with process by serving its registered agent, Fermin Venegas, at 4327 N. FM 1053, Fort Stockton, Texas 79735.

7.   Defendant Venegas Contractors, Inc., is or was a corporation formed and operating under the laws of the State of Texas.  It may be served with process by serving its registered agent, Fermin Venegas, at 4327 N. FM 1053, Fort Stockton, Texas 79735.

## VISA PROGRAMS ALLOWING ACCESS TO FOREIGN LABOR

8.   Federal law prescribes the terms under which foreigners may enter the United States to work, and what work they may lawfully perform while they are here.

*H-2A Agricultural Visa Program*

9.    The Immigration and Nationality Act ("INA") authorizes our nation's current visa program for agricultural workers, which is commonly known as "the H-2A program" because the INA provision creating this visa category is 8 U.S.C. § 1101(a)(15)(H)(ii)(a).

10.    The regulations implementing the H-2A program appear in 20 C.F.R. §§ 655.100 to 655.235 (Chapter 655, Subpart B).

11.    Congress stated two fundamental goals for the H-2A program: (1) employ workers who are U.S. citizens or permanent residents rather than foreign workers whenever possible; and (2) prevent foreign workers from adversely affecting the wages and working conditions of U.S. workers.  8 U.S.C. § 1188(a)(1)(A)-(B).

12.    Only after an employer identifies specific temporary jobs for which insufficient U.S. workers are available does INA permit visas to be made available to non-immigrant foreign workers who agree to perform those specific jobs at the time and place needed, and for specific pay.  *Id.*

13.    Employers who seek H-2A workers must file two forms with the U.S. Department of Labor ("DOL"): (a) DOL Form ETA-790, also known as a "Clearance Order."  20 C.F.R. §§ 655.121 and 655.130; and (b) DOL Form ETA-9142, an "Application for Temporary Employment Certification."

14.    Forms ETA-790 and ETA-9142 set forth identical terms of employment that the applicant employer must offer to all workers for the specific job described in each application, regardless of whether the workers who accept the job are U.S. or foreign workers.  *See* 20 C.F.R. § 655.103 (defining "employer").

3

15.   To file an H-2A application (Form ETA-9142), each employer must sign a declaration under "penalty of perjury" stating "that I have read and reviewed this application and that to the best of my knowledge the information contained therein is true and accurate," and any attempt "to aid, abet, or counsel" anyone in submitting any false information in this application is a felony.  *Id.*

16.   Each clearance order states the wages, term of employment, type of work, site of work, housing, transportation, workers' compensation coverage, and other job conditions that the employer agrees to provide each H-2A worker.  20 C.F.R. §§ 655.103 and 655.122.

17.   As a part of each job offer to H-2A workers, employers must provide a written promise to comply with all applicable federal, state, and local employment-related laws and regulations, including the FLSA.  20 C.F.R. § 655.135(e).

18.   H-2A employers must pay a wage that is the highest of: the adverse effect wage rate ("AEWR") in effect at the time the work is performed; the prevailing hourly wage or piece rate; or the Federal or State minimum wage.  20 C.F.R. §§ 655.103(b), 655.120(a), and 655.122(l).

19.   The federal "minimum wage" is $7.25 per hour.  29 U.S.C. § 206(a)(1).

20.   The federal "overtime" wage is one and a half times the regular rate of pay for all hours in excess of 40 per workweek.  29 U.S.C. § 207.

21.   H-2A employers must pay each worker transportation and subsistence expenses necessary for the worker to travel from the worker's home at the start of each H-2A work period, and to the worker's home upon completion of each H-2A work period.  20 C.F.R. § 655.122(h).

22.   H-2A employers are prohibited from requiring H-2A workers to pay kickbacks, recruiting fees, and other costs related to obtaining H-2A visas. 8 C.F.R. § 214.2(h)(5)(xi)(A), 20 C.F.R. §§ 655.122(p)(2) and 655.135(j), and 29 C.F.R. § 531.35.

4

23.   H-2A clearance orders and H-2A regulations state the terms of the contract between each H-2A employer and worker.  20 C.F.R. § 655.122(q).

24.   If DOL agrees that insufficient U.S. workers are available to fill the job described in the application and clearance order, and the employment terms stated in these documents are sufficient to avoid an adverse effect on U.S. workers, DOL certifies this fact to U.S. Citizenship and Immigration Services ("USCIS") for final approval of H-2A visas. 8 C.F.R. § 214.2(h)(2)(i).

25.   As part of DOL's certification process, DOL determines whether the job that the employer seeks to fill is in fact agricultural.   8 C.F.R. § 214.2(h)(5)(ii).

26.   Employers are not allowed to assign non-agricultural work to H-2A workers.  H-2A visas are only available for agricultural work, as defined in 8 U.S.C. § 1101(a)(15)(H)(ii)(a) and 20 C.F.R. § 655.103(c).

27.   Federal law requires employers to verify that all employees are lawfully present in the United States and lawfully permitted to be employed in the manner that the employer directs. 8 U.S.C. §§ 1324a(a) and 1324a(h)(3).

***H-2B Non-Agricultural Visa Program***

28.   Employers may only assign non-agricultural work to foreign workers under the H-2B visa program, which Congress created with the same objectives as H-2A using procedures that are similar to H-2A.  See 8 U.S.C. §§ 1101(a)(15)(H)(ii)(b), 1188(a)(1)(A)-(B); 20 C.F.R. §§ 655.1 to 655.73 (Chapter 655, Subpart A).

29.   Federal law requires H-2B workers to be paid a prevailing wage for the specific non-agricultural job and locale where the work is performed.  *See* 20 C.F.R. §§ 655.10(a), 655.20, 655.51.

30.  The prevailing wage is the average wage paid to similarly employed workers in a specific occupation in the area of intended employment.  *Id.*

31.  The prevailing wage is in most cases significantly higher than the AEWR, which is the annual weighted average hourly wage rate for field and livestock workers in each region.

32.  While the H-2A visa program has no annual cap, the H-2B visa program has a statutory cap of 66,000 workers per fiscal year.  8 U.S.C. § 1184(g)(1)(B).

## STATEMENT OF FACTS

33.  At all times relevant to this action, Defendant Fermin Venegas owned, directed, and exercised operational control over at least two businesses:

  a.  Defendant Fermin Venegas Shearing, Inc., a business that primarily provides sheep shearing labor and services to ranchers in West Texas, New Mexico, Colorado, and Wyoming; and

  b.  Defendant Venegas Contractors, Inc., a business that primarily constructs fences on ranches in West Texas.

34.  Fermin Venegas's operational control referenced in the previous paragraph included control over:

  a.  the recruitment, hiring, firing, and disciplining of all employees;

  b.  the terms and conditions of all employees' work, including their hours, type of work, place of work, and pay rates; and

  c.  decisions as to which records concerning employees were created and maintained, and how those records are stored.

35.  Every year between 2010 and 2018, Defendant Fermin Venegas filed forms ETA-9142 and ETA-790 ("the Applications") with DOL in which he petitioned for DOL's permission

to import foreign H-2A workers, including:

    a.  in October 2015, Fermin Venegas filed Clearance Order TX-7057302 and an application for H-2A certification, parts of which are attached as Exhibit A (Forms ETA 790 and 9142) requesting 24 workers to shear sheep and gather wool at various locations in Texas and Wyoming between December 7, 2015 and September 7, 2016;

    b.  in October 2016, Fermin Venegas filed Clearance Order TX-8489192 and an application for H-2A certification, parts of which are attached as Exhibit B (Forms ETA 790 and 9142) requesting 24 workers to shear sheep, gather wool, and occasionally build pens to hold sheep during shearing at various locations in Texas and Wyoming between December 5, 2016 and October 5, 2017; and

    c.  in October 2017, Fermin Venegas filed Clearance Order No. TX-8572811 and an application for H-2A certification, parts of which are attached as Exhibit C (Forms ETA 790 and 9142) requesting 24 workers to shear sheep and gather wool at carious location in Texas, Wyoming, and Colorado between December 5, 2017 and October 5, 2018.

36.  The Applications seek up to 24 people each year people to work as "sheep shearer" and "wool handler" for Defendants.

37.  The Applications offer work terms in compliance with applicable DOL regulations, including that all H-2A workers would be paid the effective AEWR for all hours worked.

38.  Defendant Fermin Venegas signed all of the Applications, swearing under penalty of perjury that all terms and conditions of employment contained in them were accurate.

39.  In reliance on the representations made in the Applications, DOL approved them.

40.  DOL's approval of the Applications caused the U.S. Department of Homeland

Security to allow Fermin Venegas to choose workers who would receive H-2A visas to enter the

U.S. to perform the work on the terms specified in the Applications.

41.  In 2011, 2012, 2014, 2015, 2016, and 2017, Defendant Fermin Venegas and his

agents approached Mr. Tijerina in Mexico and recruited him to work in Texas under H-2A visas.

42.  In 2011, 2012, 2014, 2015, 2016, and 2017, Mr. Tijerina accepted the offers to work

for Defendants under H-2A visas, entered the United States under H-2A visas to work

exclusively for Defendants, and performed the work assigned by Defendant Fermin Venegas.

43.  In 2011, 2012, 2014, 2015, 2016, and 2017, Mr. Tijerina's H-2A visa was based

upon and tied to a Clearance Order that outlined the promised job duties and the terms and

conditions of Mr. Tijerina's employment, including the clearance orders attached as Exhibits A,

B, and C.

44.  Each clearance order that produced an H-2A visa for Mr. Tijerina, including Exhibits

A, B, and C, stated the terms of an employment contract between Mr. Tijerina and each

Defendant, including:

     a.  Mr. Tijerina would be paid the highest of the AEWR, the prevailing wage for the

       work performed, the wage guaranteed by a collective bargaining agreement, or

       the minimum wage required by federal or Texas law;

     b.  Mr. Tijerina would be employed in compliance with all relevant employment

       laws, including the FLSA;

     c.  Mr. Tijerina would work an anticipated 40-hour work week; and

     d.  Defendants would reimburse Mr. Tijerina for his travel expenses.

45.  Attached Exhibit D contains true and correct copies of documents that one or more

Defendants caused to be written and presented to Mr. Tijerina for his signature.

46.  At all times relevant to this action, Mr. Tijerina was an "employee" of each and every Defendant within the meaning of the FLSA, 29 U.S.C. § 203(d).

47.  At all times relevant to this action, each and every Defendant acted as Tijerina's employers for purposes of the FLSA, 29 U.S.C. § 203(g), and the common law because:

    a.  the services rendered by Mr. Tijerina were a central part of each Defendant's business;

    b.  Mr. Tijerina's employment simultaneously benefitted each Defendant;

    c.  all Defendants contracted with ranchers for fencing services informally and collectively as "Venegas;"

    d.  all Defendants fulfilled their contracts with ranchers using a pool of labor shared among all Defendants;

    e.  Defendants billed their fencing clients variously as "Fermin Venegas Shearing, Inc.," "Venegas Contractors, Inc.," "Fermin Venegas," and various other names under which Fermin Venegas does business individually;

    f.  each Defendant held and exercised significant control over Mr. Tijerina's work; and

    g.  Mr. Tijerina worked exclusively for Defendants.

48.  As joint employers, Defendants Fermin Venegas Shearing, Inc., and Venegas Contractors, Inc., entered into an employment contract with Mr. Tijerina that included the terms described in the clearance orders described above, including Exhibits A, B, and C.

49.  Mr. Tijerina fulfilled all promises he made in each of his employment contracts by working as assigned by Defendants.

50.  Mr. Tijerina performed the work assigned by Defendants during all relevant times,

which include the entire term of employment specified in Exhibits A, B, and C, and approximately ten additional days after each of these three terms of employment as assigned by Defendants.

51.  At all times relevant to this action, all Defendants required Mr. Tijerina to perform work that was outside the scope of the job listed in that year's Clearance Order.

52.  Rather than assign Mr. Tijerina sheep shearing work in Texas, Colorado, and Wyoming, Defendants assigned Mr. Tijerina to perform the same non-agricultural work at all times, namely repairing and servicing the heavy equipment and machinery that Defendants and Defendants' employees use to construct fences at ranches throughout West Texas.

53.  At all times relevant to this action, Mr. Tijerina performed the work assigned by Defendants, which consisted of repairing and servicing their heavy equipment and machinery, including without limitation trucks, caterpillars, hydraulic tools, compressors, welding machines, and front-end loaders.

54.  At all times relevant to this action, Mr. Tijerina spent approximately 20 percent of his time repairing and maintaining equipment at Defendants' "yard" located at 4327 N. Hwy. 1053, Ft. Stockton, Texas, and approximately 80 percent of his time repairing and maintaining equipment at Defendants' various fencing jobsites throughout West Texas.

55.  At all times relevant to this action, fencing foremen known as "pushers" would call Mr. Tijerina directly when their equipment needed attention, and describe both the problem and their location.

56.  Defendants assigned Mr. Tijerina to respond to each such call by driving to the worksite and repairing the equipment.

57.  If expensive parts were needed for any repair, Mr. Tijerina was required to obtain

10

Fermin Venegas's approval prior to purchasing expensive parts.

58.  Each Defendant benefited from Mr. Tijerina's labor.

59.  At all times relevant to this action, Mr. Tijerina was paid for all of his work via paychecks issued by "Fermin Venegas Shearing, Inc."

60.  The effective AEWR in Texas for each relevant calendar year was:

    a.  2015: $10.35;

    b.  2016: $11:15;

    c.  2017: $11.59; and

    d.  2018: $11.87.

*See* 20 C.F.R. § 655.120(c); https://www.foreignlaborcert.doleta.gov/adverse.cfm.

61.  At all times relevant to this action, Defendants ordered Mr. Tijerina to perform work that consumed over 84 hours per week, including an average of over 12 hours per day seven days per week, and up to 18 hours in a single day.

62.  Mr. Tijerina actually worked an average of over 84 hours per week during the entire term of each of his H-2A visas, including those described in Exhibits A, B, and C, and approximately ten additional days after each visa term as assigned by Defendants.

63.  At all times relevant to this action, Defendants permitted Mr. Tijerina to take an average of two days of rest approximately every six weeks.

64.  At all times relevant to this action, Defendants failed to record the hours actually worked by Mr. Tijerina.

65.  At all times relevant to this action, Defendants paid Mr. Tijerina a flat rate for each day that Mr. Tijerina worked.

66.  Defendants calculated Mr. Tijerina's daily rate of pay by multiplying an hourly rate,

which roughly corresponded to the AEWR, by eight hours regardless of how many hours Mr. Tijerina actually worked that day.

67.  Defendants regularly paid Tijerina an effective hourly rate that was less than the federal and Texas state minimum wage of $7.25 per hour.

68.  Defendants routinely falsified Mr. Tijerina's pay records, regularly recording that he worked 8 hours per day and 56 hours per week, when in fact Mr. Tijerina worked more than 84 hours each week.

69.  Although Mr. Tijerina worked over 40 hours during every workweek at issue in this action, Defendants never paid Mr. Tijerina the overtime premium required by the FLSA for any hours that he worked over 40 in any workweek.

70.  The payroll records kept and maintained by Defendants were inaccurate because they did not show the actual number of hours actually worked, and Defendants failed to provide Mr. Tijerina with accurate wage statements.

71.  As a result of Defendants' improper pay practices, Defendants routinely paid Mr. Tijerina an effective hourly wage rate that was less than the hourly wage rate promised on the clearance order and incorporated into Mr. Tijerina's H-2A employment contracts, less than the wage rate stated on his earning statements, and less than the minimum prevailing wage rates required for all hours that Mr. Tijerina worked.

72.  At all times relevant to this action, the highest effective rate—the applicable prevailing wage for the work Tijerina actually performed—was over $20.00 per hour.

73.  The work Mr. Tijerina performed falls under the Bureau of Labor Statistics Standard Occupational Classification ("SOC") codes 49-3042 and/or 49-9043, which DOL determined to have the following prevailing wages:

a.  from July 2015 through June 2016, the DOL prevailing wage determination in Crockett County, Texas, for SOC 49-3042 was $20.52 and for SOC 49-9043 was $23.31;

b.  from July 2016 through June 2017, the DOL prevailing wage determination in Crockett County, Texas, for SOC 49-3042 and SOC 49-9043 was $21.73; and

c.  from July 2017 through June 2018, the DOL prevailing wage determination in Crockett County, Texas, for SOC 49-3042 was $22.89 and for SOC 49-9043 was $22.08.

*See* https://flcdatacenter.com/Download.aspx.

74.  At all times relevant to this action, the AEWR for shearing work was between $10.35 and $11.87 per hour.

75.  During each visa period except the one described in Exhibit C (December 2017 to October 2018), Defendants paid even the falsified eight hours per day at the improper AEWR, failing to adopt the new AEWR that became effective on January 1 of each year.

76.  Each year that Mr. Tijerina entered the United States under an H-2A visa issued to Defendant Fermin Venegas, Defendants failed to reimburse Tijerina for his full transportation and subsistence costs from the point of his recruitment in Mexico to his place of work in the United States and back to Mexico upon completion of each visa period.

## CAUSES OF ACTION

77.  To support each of the following causes of action, Mr. Tijerina incorporates by reference all paragraphs in the preceding Statement of Facts, and pursuant to Rule 10(c), all statements that appear in the attached Exhibits.

## COUNT I: FAIR LABOR STANDARDS ACT

78.  This count sets forth a claim for declaratory relief and damages for each Defendant's violations of the FLSA's minimum wage and overtime requirements.

79.  All Defendants constitute an "enterprise" within the meaning of 29 U.S.C. § 203(r)(1) because: (a) they are engaged in related activities, namely contracting to perform ranching-related services to landowners in West Texas; (b) all are owned, operated, and controlled by Defendant Fermin Venegas; and (c) they share a common business purpose, namely reaping financial gain by contracting labor to perform services in West Texas.

80.  Defendants are an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1) because they: (a) have at least two employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce, namely wool, machinery, and fencing materials; and (b) have a combined annual gross volume of business that exceeds $500,000, exclusive of excise taxes, based in part on the number of H-2A workers they have consistently import each year, and the required salaries for these workers.

81.  At all times relevant to this action, including all periods of employment listed in Exhibits A, B, and C, and approximately ten additional days of work assigned by Defendants after each visa period:

    a.  Defendants all employed Mr. Tijerina;

    b.  Mr. Tijerina performed approximately 84 hours of work that is covered by the FLSA;

    c.  Defendants did not record the number of hours that Mr. Tijerina actually worked;

    d.  Defendants did not pay Mr. Tijerina based on the number of hours that Mr.

14

Tijerina actually worked;

e.  the regular rate of pay due to Mr. Tijerina was the prevailing wage of over $20 per hour as detailed above;

f.  Defendants failed to pay Mr. Tijerina at least the minimum wage for all hours worked;

g.  Defendants failed to pay Mr. Tijerina the required overtime wages for all hours he worked over 40 during each workweek.

82.  Defendants failed to maintain complete and accurate records of the hours worked by and compensation paid to Mr. Tijerina as required by the FLSA.

83.  Defendants' failure to pay Mr. Tijerina the minimum and overtime wages required by the FLSA was a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a), based in part on the obviousness of the violations, the creation of false time records, the repeated false written assurances made by Defendant Fermin Venegas related to participation in the H-2A program, the longstanding and repeated nature of the violations, and Defendants' failure to display any poster or other document describing FLSA rights in Spanish in any place where Tijerina could see it.

84.  For these violations, Tijerina is entitled to recover his unpaid minimum and overtime wages, an equal amount in liquidated damages, attorney's fees, and costs of court, pursuant to 29 U.S.C. § 216(b), and a declaration that individually and collectively Defendants willfully violated the FLSA's minimum wage and overtime requirements.

85.  Mr. Tijerina's FLSA consent form is attached as Exhibit E.

## COUNT II.  BREACH OF CONTRACT

86.  This count sets forth a claim for damages for each Defendant's breach of the H-2A

15

contracts attached as Exhibits A, B, and C.

87.   The DOL-approved Applications for Temporary Employment Certification and Clearance Orders that Defendants submitted to obtain Mr. Tijerina's H-2A visas (ETA Forms 790 and 9142A), including all applicable regulatory requirements, were incorporated by law into the contracts between Defendants on the one hand as employers and Mr. Tijerina as employee, with enforceable terms and conditions of employment, including an enforceable guarantee of wages no less than the applicable prevailing wage.

88.   Mr. Tijerina satisfactorily performed all employment duties and responsibilities required of him under each of his employment contracts with Defendants, including Exhibits A, B, and C.

89.   Defendants breached each of their employment contracts with Mr. Tijerina by failing to comply with the terms and conditions of the contracts, including those terms relating to hours, records, pay, work type, earnings statements, FLSA compliance, wage rate at the prevailing wage rate, and reimbursement for travel and related costs.

90.   Mr. Tijerina is entitled to recover his damages for Defendants' breaches pursuant to Texas common law and reasonable attorney's fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code.

## COUNT III.  QUANTUM MERUIT

91.   Only to the extent that the previous counts do not permit recovery of all damages suffered by Mr. Tijerina, this count sets forth a claim for damages in quantum meruit.

92.   Defendants directed Mr. Tijerina to perform services.

93.   Mr. Tijerina performed valuable services for Defendants.

94. Defendants accepted the benefit of Mr. Tijerina's services under circumstances that reasonably notified Defendants that Mr. Tijerina expected compensation for his services.

95. Defendants knew that Mr. Tijerina expected compensation for his services.

96. The above-described actions unjustly enriched Defendants.

97. Mr. Tijerina is entitled to compensation at the lawfully required wage applicable to the work he performed, *i.e.*, the appropriate prevailing wage in effect at the time, pursuant to Texas's common law of quantum meruit.

98. Mr. Tijerina is further entitled to reasonable attorney's fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code.

**JURY DEMAND**

99. Mr. Tijerina respectfully asserts his right to a jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Sergio Tijerina-Salazar prays that this Court:

a. declare that each Defendant: (a) violated the FLSA's minimum wage, overtime, and record keeping requirements as set forth above; and (b) breached its contracts with Mr. Tijerina;

b. award damages to Me. Tijerina for Defendants' failure to pay minimum and overtime wages as required by the FLSA, and an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b);

c. award actual, incidental, and consequential damages caused by Defendants' breach of their contracts with Mr. Tijerina;

d. award quantum meruit damages as necessary to afford Mr. Tijerina full relief;

e.  award Mr. Tijerina the costs of this action and reasonable attorney's fees pursuant to 29

    U.S.C. § 216(b) and TEX. CIV. PRAC. & REM. CODE § 38.001;

f.  award Mr. Tijerina pre-judgment and post-judgment interest, as appropriate; and

g.  grant such other relief as this Court deems just and proper.


December 19, 2019                    Respectfully submitted,
                                     TEXAS RIOGRANDE LEGAL AID, INC.

                                     /s/ *Jerome Wesevich*
                                     Jerome Wesevich
                                        Texas Bar No. 21193250
                                        jwesevich@trla.org
                                     1331 Texas Ave.
                                     El Paso, Texas 79901
                                     Tel (915) 585-5103
                                     Fax (915) 533-8823

                                     *Attorney for Plaintiff*