## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## PECOS DIVISION

| | | |
|---|---|---|
| **SERGIO TIJERINA-SALAZAR,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **PE:19-CV-00074-DC-DF** |
| | § | |
| **FERMIN VENEGAS, III,** *et al.,* | § | |
| *Defendants.* | § | |

**OMNIBUS ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL PLAINTIFF'S IN-PERSON DEPOSITION IN EL PASO, TEXAS (DOC. 93); (2) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL WRITTEN DISCOVERY FROM DEFENDANT GENESIS VENEGAS SALMON (DOC. 95); (3) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO CONTINUE DEPOSITION OF DEFENDANT FERMIN VENEGAS, III, AND TO COMPEL RESPONSIVE ANSWERS (DOC. 108); AND (4) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL WRITTEN DISCOVERY FROM DEFENDANT FERMIN VENEGAS, III (DOC. 113)**

BEFORE THE COURT are the following discovery-based motions: Defendants Fermin Venegas (individually, "Venegas"), Fermin Venegas Shearing, Inc., Venegas Contractors, Inc. (collectively without Genesis Venegas Salmon, "Venegas Defendants"), and Genesis Venegas Salmon's (individually, "Salmon") (collectively with Venegas Defendants, "Defendants") Motion to Compel Plaintiff's In-Person Deposition in El Paso, Texas (Doc. 93); Plaintiff Sergio Tijerina-Salazar's ("Plaintiff") Motion to Compel Written Discovery from Defendant Genesis Venegas Salmon (Doc. 95); Plaintiff's Motion for Leave to Continue Deposition of Defendant Fermin Venegas, III, and to Compel Responsive Answers (Doc. 108); and Plaintiff's Motion to Compel Written Discovery from Defendant Fermin Venegas, III  (Doc. 113). This case is before the undersigned through an Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges.

### I.    BACKGROUND

This suit's genesis is Plaintiff's work for Venegas Defendants as an H-2A visa recipient. (Doc. 47 at 1–2). Plaintiff alleges he was employed by the Venegas Defendants as a heavy equipment

mechanic between 2011 and 2018. *Id.* As part of this work, Plaintiff alleges that Salmon was employed by Venegas Defendants, and held such duties as preparing H-2A visa applications for Venegas Defendants, responding to federal and state government inquiries regarding said applications, and assisting workers in accessing their visas following approval by the federal government. *Id.* at 7. On December 19, 2019, Plaintiff filed suit against Defendants for numerous breaches of contract and violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* (Doc. 1 at 1).

On June 26, 2020, Plaintiff filed a Motion to Compel Written Discovery from Defendant Fermin Venegas, III (hereafter, "Original Motion to Compel"). (Doc. 15). On October 26, 2020, the Court issued an order ("hereafter, October 2020 Order") on the Original Motion to Compel, requiring all Defendants to produce a multitude of discovery documents pertaining to Venegas's shearing and fencing business. (Doc. 27). Starting on October 24, 2021, Defendants and Plaintiff filed several discovery-based motions, with Defendants filing one, and Plaintiff filing three. (Docs. 93, 95, 108, 113). Both parties filed responses and Replies. (Docs. 96, 101, 103, 115, 118, 119, 126). On November 24, 2021, Plaintiff filed a Notice to the Court pertaining to his Motion to Compel Written Discovery from Defendant Genesis Venegas Salmon (hereafter, "Notice on Salmon"), advising the Court that limited issues in the motion remain. (Doc. 117).

## II. DISCUSSION

After review of the parties' filings and the applicable case law, the Court held a hearing on December 10, 2021. At the hearing, the Court ruled on each of the pending discovery-based motions, and now **ORDERS** the following:

### A. Defendants' Motion to Compel Plaintiff's In-Person Deposition in El Paso, Texas (Doc. 93)

Defendants' Motion to Compel Plaintiff's In-Person Deposition in El Paso, Texas is **GRANTED IN PART** and **DENIED IN PART**. (Doc. 93). Defendants request that the Court "order

2

Plaintiff to appear for an in-person deposition in El Paso, Texas," as opposed to the previously conducted video conference depositions, and grant an additional four hours for the deposition, instead of allotting only the remaining one hour. *Id.* at 8; (Doc. 101 at 2). Defendants claim that Plaintiff was only initially granted a remote deposition due to COVID-19 concerns. (Doc. 93 at 1). Defendants also argue that an in-person deposition is necessary because, as the interpreter claims, "Plaintiff's counsel was coaching the witness in Spanish during the [remote] deposition" through various "speaking objections." *Id.* at 5; (Doc. 101 at 3). Lastly, Defendants argue, "Plaintiff should be required to appear for a deposition in the forum in which he filed suit." (Doc. 93 at 5–6).

Here, the primary issue is whether Defendants' deposition of Plaintiff can continue via remote conference, or instead should be ordered to occur in-person in El Paso, Texas. Under Federal Rule of Civil Procedure 26, the Court has authority to issue, upon a showing of good cause, protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). Under this provision, the Court "enjoys wide discretion in determining the method of discovery." *Cantu v. Mammoth Energy Servs.*, No. SA-19-CV-00615-DAE, 2021 WL 3852034, at *2 (W.D. Tex. Aug. 27, 2021) (citing FED. R. CIV. P. 26(c)(1)(B)) (noting as a potential purpose of such protective orders the ability to "specify[] terms, including time and place or the allocation of expenses, for the disclosure or discovery").[1]

Federal Rule 30 provides the Court with the additional ability to order a continued remote deposition. FED. R. CIV. P. 30. Determining whether an in-person deposition should be ordered requires a weighing of the benefits and disadvantages to each party presented by such prospect. *See Gatte v. Lowes Home Ctrs. LLC*, No. 6:20-CV-00472, 2020 WL 8674185, at *1 (W.D. La. Nov. 30,

---

1. Federal Rule 30, as will be discussed below, allows the Court to order that "a deposition be taken by telephone or other remote means." FED. R. CIV. P. 30(b)(4). In assessing the propriety of a remote deposition, courts consider the hardship an individual deponent might experience, particularly his "(1) age, (2) physical condition, (3) finances, and (4) other factors that might result in extreme hardship." *Knuth v. Regional Transit Auth. of New Orleans*, No. 20-396, 2020 WL 6742800, at *4 (E.D. La. Nov. 17, 2020). Only the third factor has any relevance here, and in any event, Plaintiff seeks an in-person deposition, not a remote deposition. (*See* Doc. 93).

2020). Especially since the outset of COVID-19, courts throughout the Fifth Circuit have often "refused to compel in-person attendance at depositions." *Ross v. Dejarnetti*, No. 18-11277, 2020 WL 7495555, at *4 (E.D. La. Dec. 21, 2020).

The previous remote deposition of Plaintiff is highly contested, and the disputed circumstances of its format constitute the basis for Defendants' motion. During COVID-19, "remote depositions are presumptively valid under the Federal Rules." *In re Terrorist Attacks on Sept. 11, 2001*, 337 F.R.D. 575, 579 (S.D.N.Y. 2020). Thus, Defendants possess the burden of demonstrating good cause as required under Federal Rule 26. *See id.* ("The parties have already conducted remote depositions and there have been no allegations of witness tampering or improper coaching . . . [so t]he Court assumes that the parties will work together . . . ."). This good cause analysis "requires a fact-specific inquiry." *Williams v. Fire Sprinkler Assocs. Inc.*, No. CV-15-3147, 2017 WL 1156012, at *4 (E.D.N.Y. Mar. 27, 2017). In this instance, Defendants' allegations offered to demonstrate good cause are three-fold as follows: witness coaching, pretextual COVID-19 concerns, and the fact that Plaintiff chose the forum district in which Defendants request the in-person deposition. Each of these will be addressed in turn.

The Court finds Defendants' claim that Plaintiff's counsel was coaching the witness bears no overall measured effect on good cause. Defendants claim that Plaintiff's counsel coached the witness by suggesting certain corrections to Plaintiff's testimony as it was interpreted by Defendants' interpreter, since Plaintiff's counsel is also fluent in Spanish. (Doc. 93 at 5). Plaintiff suggests instead that these speaking "interjections" were necessary in order to preserve corrections for the transcript post-deposition.[2] (*See* Doc. 96 at 2, 9). This proposition, while not directly addressed in the Fifth Circuit, does have some basis in case law elsewhere. In particular, courts throughout the country

---

[2] The Court notes that Plaintiff provides a hyperlink to an Internet website featuring the video. (Doc. 96 at 2). However, the link is unable to be followed, with the website displaying a message that the link has expired. Since Plaintiff's hyperlink to the video is no longer active, the Court will examine the arguments from the hearings, the pleadings, and the transcript as provided.

have allowed attorneys to "contemporaneously assert[] . . . corrections to the translation" where appropriate. *See Cerda v. Cillessen*, No. 19-1111-JWB, 2020 WL 4500721, at *7 (D. Kan. Aug. 5, 2020). Other courts have expressly affirmed the notion that counsel has a "right to object when he legitimately felt a translation was inaccurate," particularly where "there were no more than two or three such translation objections at each session." *Sokolova v. United Airlines*, No. 18 C 2576, 2020 WL 354750, at *5 (N.D. Ill. Jan. 21, 2020).

Thus, "even though speaking objections are technically improper," so long as counsel explains "what part of the translation it is that he finds inaccurate," courts that have addressed the issue have often upheld counsel's right to contemporaneously object. *Id.* Here, Plaintiff's counsel attempted as such: many a time, Plaintiff's counsel objected when he presumably felt Defendants' interpreter wrongly translated Plaintiff's statements, and noted which term was at issue and discussed his corrections. (*See* Doc. 96 at 6; *see also* Doc. 96-1 at 8). During the primary exchange at issue, the "interjections" by Plaintiff's counsel "were invariably extended not by counsel, but by soliloquies from the interpreter," here being the interpreter's suggestions that Plaintiff's counsel was coaching the witness. *See Sokolova*, 2020 WL 354750, at *5; (*see also* Doc. 96-1 at 24). Plaintiff's counsel as noted seemingly attempted only to correct what he thought were inaccurate translations of Plaintiff's testimony, which is allowed in many of the courts that have addressed the issue. While it may be true that Defendants' interpreter through the many objections became "so uncomfortable that she refused to continue the deposition," the interpreter's emotions alone do not convince the Court that Plaintiff's counsel was actually coaching Plaintiff. (Doc. 93 at 5). Further, while "an interpreter may be used where the statement to be translated is audible but is not understandable to the listener because it is in a language foreign to the listener or is in English but employs jargon or code words with which the listener is unfamiliar," which is the likely use of the interpreter here, interpreters can nevertheless be incorrect. 27 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE §

6053 (2d ed. 2021); (*see* Doc. 96-1 at 8). Therefore, this characterization of Plaintiff's counsel's interjections does not support Defendants' good cause for an in-person deposition.

The Court finds more persuasive Defendants' argument that Plaintiff's presumed COVID-19 concerns are no longer valid. Initially, Plaintiff claimed concerns over the "widespread . . . transmission" of COVID-19, which caused the Court to allow the remote deposition at issue. (Docs. 63 at 4; 67). Similar arguments have failed in courts in the Fifth Circuit, but the litigation invoking them can be distinguished. For example, in *Dotson v. Bexar County*, the Western District of Texas, San Antonio Division, considered the defendant, Bexar County's, notice of the in-person deposition of the defendant's expert. No. SA-19-CV-00083-XR, 2021 WL 796164, at *1 (W.D. Tex. Mar. 2, 2021). The plaintiffs had requested that the deposition be conducted via Zoom due to the expert's COVID-19 concerns, to which Bexar County refused to agree. *Id.* Bexar County attempted to demonstrate that the expert was "misrepresenting the degree to which he has been isolating during the pandemic" and provided photographs of the "participating in an in-person interview, seated outside in his backyard, unmasked, in the presence of other people." *Id.* Bexar County proposed social distancing and mask wearing to countenance "any sincere fear of transmission." *Id.* The court there found these arguments not convincing, considering in particular the "rational and objective reasons" the plaintiffs and the expert provided given the expert's lack of vaccination, as well as the finding that Bexar County would "not [be] significantly prejudiced" by the ruling. *Id.* at *2.

In this instance, Plaintiff's COVID concerns are not nearly as pertinent now, nearing the 2021 Christmas holiday, as they were in July 2021, when the Court issued its remote deposition order. Although it may be true that the Centers for Disease Control has revised its guidance due to the emergence of new COVID strains (Docs. 96 at 12; 96-6 at 2–7), Defendants are correct in that the analysis for determining whether COVID concerns should influence the format of the deposition depends on the legitimacy of Plaintiff's possessing these concerns. (Doc. 101 at 4). If Plaintiff has appeared himself elsewhere in-person for other depositions and Plaintiff's counsel for Defendants'

own deposition during and throughout the pandemic, as Defendants claim and which has not been disputed (Doc. 101 at 5 n.4), this would indicate that Plaintiff does not truly believe COVID is a pertinent barrier from attending in-person depositions. Further, unlike the expert in *Bexar County*, Plaintiff and his counsel are all fully vaccinated, and are comfortable with wearing masks amongst themselves in-person, as they have done for the videoconference deposition at issue. (Doc. 96 at 12); *see Sunstate Equip. Co., LLC v. EquipmentShare*, No. 2:19-cv-784 HCN, 2020 WL 7401630, at *1 (D. Utah Dec. 17, 2020) (observing that the defendants "want to have their cake and eat it too" by "want[ing] their own counsel present for any deposition, but . . . not want[ing] opposing counsel present, citing to health concerns."). Additionally, while it is true that in July 2021, the Court held that Defendants did "not ma[k]e a particularized showing that a deposition via remote electronic means will prejudice them," changed circumstances warrant reconsideration. (Doc. 67 at 1). Given the alleged off-camera appearance of Plaintiff's counsel and the coaching accusations during the remote deposition, it would further seem that Defendants would indeed be significantly prejudiced by further videoconference depositions. (Doc. 93 at 3). Thus, contrary to the considerations present in *Bexar County*, and those existing pre-deposition in July 2021, the Court finds that COVID-19 is apparently no longer a legitimate concern for Plaintiff and his counsel, which accordingly supports Defendants' case for good cause considering how one of the original considerations for the Court's inclination to order the remote deposition of Plaintiff has since been rendered inapplicable.

The Court also concludes that Defendants achieve success through their last major argument—that Plaintiff should have to appear in the forum in which he chose to sue, particularly El Paso, Texas, located in the Western District of Texas. Generally, "[t]here is a rebuttable presumption that a plaintiff may be deposed in the judicial district where the action was brought." *Sieber v. Delta Air Lines*, No. 17-13024, 2019 WL 2067540, at *1 (E.D. La. May 9, 2019). Plaintiff can only overcome this presumption by "persuasively demonstrat[ing] that requiring him to travel to the forum district for his deposition would, for physical or financial reasons, be practically impossible, or that it

would be otherwise fundamentally unfair." *In re Outsidewall Tire Litig*, 267 F.R.D. 466, 471 (E.D. Va. 2010). Plaintiff claims that he is unable to enter the United States, and otherwise cannot afford to travel, and that subsequently his depositions must continue to be taken from Mexico. Here, Defendants have demonstrated that the Federal Government has lifted entry and travel bans from Mexico for fully vaccinated individuals. (Doc. 101 at 4 n.3). The Court observes that Plaintiff has not sufficiently rebutted the general presumption, and that this consideration therefore buttresses Defendants' good cause argument.

In this case, Defendants have shown good cause for the Court to order Plaintiff's in-person deposition. However, the question of the precise location of the in-person deposition is another issue still. The parties seemingly agree that an in-person deposition, should the Court order one, be ordered for an alternative county in West Texas, and Plaintiff admitted such at the hearing. (Docs. 94 at 6 n.2 (requesting Pecos County); Doc. 96 at 13 (signaling Val Verde County)). Yet, Plaintiff presents worries, perhaps some of which are justified given the ever-changing state of COVID-19 travel restrictions, about his diplomatic ability to enter the United States from Mexico, whether by land crossing or otherwise. Additionally, Plaintiff has identified one of Defendants' counsel, Robert Garza, as having presence in Del Rio, Texas, which is purportedly only "ten minutes away" from Acuna, Mexico. (Doc. 96 at 13). With regards to any concerns about Plaintiff's travel budget, Plaintiff and his counsel most likely do not have a significant budgeting issue for a deposition in Acuna, since the challenged deposition was taken by Plaintiff and his counsel appearing remotely from a location in Acuna. (Docs. 93 at 6; 96 at 13; 101 at 5). Lastly, Defendants' request that four as opposed to a single hour be given to address some topics which would otherwise have been covered during a complete deposition is reasonable. (Doc. 101 at 2). With these additional considerations, the Court believes a compromise is in order, in the form of a four-hour, in-person deposition in Acuna, Mexico, which would satiate all of both Defendants' and Plaintiff's concerns.

Accordingly, Defendants' Motion to Compel Plaintiff's In-Person Deposition in El Paso, Texas is **GRANTED IN PART** and **DENIED IN PART**. (Doc. 93). The Court **ORDERS** that Plaintiff appear for a **four-hour, in-person deposition** in Acuna, Mexico, to be scheduled for a date within **forty-five (45) days** of the entry of this Order.

**B.  Plaintiff's Motion to Compel Written Discovery from Defendant Genesis Venegas Salmon (Doc. 95)**

Plaintiff's Motion to Compel Written Discovery from Defendant Genesis Venegas Salmon is **GRANTED IN PART** and **DENIED IN PART**. (Doc. 95). Before considering the arguments, it should be noted that on November 24, 2021, Plaintiff filed his Notice on Salmon, explaining that the only remaining items in the Motion to Compel Discovery from Salmon are Request for Production 4 ("Production 4") and Interrogatory 8. (Doc. 117 at 1). In his motion, Plaintiff seeks to utilize the provisions of Federal Rule of Civil Procedure 37(a)(3)(B)(iii)-(iv) "to compel interrogatory answers and document production from . . . Salmon." (Doc. 95 at 1). Plaintiff argues that Salmon's responses include "four improper [global] objections," as well as "specific flaws." (Docs. 95 at 3, 8; 95-2 at 8). As to the global objections in particular, Plaintiff first takes issue with Salmon's responses to both Interrogatory 8 and Production 4 being made "subject to, and without waiving" objections[3]; second, the objection to Production 4 including the phrase "th[e] request . . . assumes [Salmon] has legal obligations which she does not have; third, Salmon's making of vagueness objections in both Interrogatory 8 and Production 4; and fourth, Salmon's responding with boilerplate objections present in both Interrogatory 8 and Production 4. (Doc. 95 at 3–8). The specific flaws include Salmon's objection to Interrogatory 8 on the grounds that "it violates the attorney-client and work

_____

3. Salmon has withdrawn the "subject to, and without waiver" objections "from all of her responses to Plaintiff's discovery requests." (Doc. 100 at 4). For good measure, courts generally agree with Plaintiff here, that "subject to" and "without waiving" objections are "manifestly confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure." *Heller v. City of Dallas*, 303 F.R.D. 466, 487 (N.D. Tex. 2014). Given Salmon's withdrawal of the first global flaw, the Court will consider the remaining five objections: three global objections, as well as the two specific flaws.

product privileges"; and Salmon's objection to Production 4 stating that Plaintiff's "request seeks confidential third-party information that this Defendant is not authorized to disclose." (Docs. 95 at 8; 95-2 at 8; 95-3 at 5).

Federal Rule of Civil Procedure 37 governs motions to compel discovery or disclosure. FED. R. CIV. P. 37 ("[A] party seeking discovery may move for an order compelling an answer, designation, production, or inspection."). Federal Rule 37 allows such a motion when a party fails to answer an interrogatory under Federal Rule 33 or respond to a request for production under Federal Rule 34, provided such discovery requests are within the scope of Federal Rule 26(b).[4] *See* FED. R. CIV. P. 37(a)(3); *accord Crosswhite v. Lexington Ins. Co.*, 321 F. App'x 365, 368 (5th Cir. 2009) ("A party may move to compel production of materials that are within the scope of discovery and have been requested but not received."). Under Federal Rule 37, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4). The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990); *see also Acosta v. FCA US LLC*, No. PE:16-CV-17-DAE-DF, 2016 U.S. Dist. LEXIS 197653, at *7, 2016 WL 10568253, at *3 (W.D. Tex. Oct. 7, 2016). In other words, the resisting party "must show how the requested discovery is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005)).

All responding parties have a "duty to respond to or answer a discovery request to the extent that it is not objectionable." *Heller v. City of Dallas*, 303 F.R.D. 466, 487 (N.D. Tex. 2014). Federal Rule 33 provides that "[a]n interrogatory may relate to any matter that may be inquired into under

---

4. A request within the scope of Federal Rule 26(b) includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b).

[Federal] Rule 26(b)." FED. R. CIV. P. 33(a)(2). On the other hand, "[t]he production of documents . . . is governed by Federal Rule of Civil Procedure 34(a)." *Hernandez v. Results Staffing, Inc.*, 907 F.3d 354, 361 (5th Cir. 2018). Federal Rule 34(a) states that "[a] party may serve on any other party a request within the scope of [Federal] Rule 26(b) . . . to produce and permit the requesting party or its representative to inspect, copy, test, or sample [any designated documents] in the responding party's possession, custody, or control." FED. R. CIV. P. 34(a).

Federal Rule 37(a)(1) requires a party moving to compel discovery to "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1); *see also* Local Rule CV-7(g) (same). For each item of discovery requested in the motion, the movant must have "discussed [them] in good faith in an effort to resolve it as required by [Federal] Rule 37." *Anzures v. Prologis Tex. I LLC*, 300 F.R.D. 314, 316 (W.D. Tex. 2012). In attempting to define the bounds of "good faith," courts in the Fifth Circuit have weighed in on the issue. Where a good faith conferral or attempt to confer following a single letter or call initiation has been found lacking, courts have examined the required Certificate of Conference for the presence of details regarding "who, where, how, and when the respective parties attempted to personally resolve the discovery dispute." *Compass Bank v. Shamgochian*, 287 F.R.D. 397, 398 (S.D. Tex. 2012) (citing *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 170 (D. Nev. 1996)). The movant is required to at least attempt a "two-way communication" and avoid "treat[ing] the informal negotiation process as simply a formal prerequisite to judicial review of the discovery dispute." *Id.* at 399. A single letter requesting a call or further communications has been found to be sufficient where the movant "demonstrated that the defendants have been unwilling in the related matter to produce discovery responses seeking the same information, even when ordered by this Court," *in addition* to the movant being "justified in assuming that this discovery dispute could not be resolved and that the defendants

would try any tactic to delay production." *Barcosh, Ltd. v. Dumas*, No. 08-92-JVP-SCR, 2008 WL 4286506, at *2 (M.D. La. Sept. 18, 2008).

       *a.   Conferral Requirement*

As a preliminary matter, the conferral requirement must be addressed. Salmon raised an argument in her response with the claim that Plaintiff filed his motion "without first conferring with her counsel," and requests that the motion not be considered until conference occurs. (Doc. 100 at 1). Salmon claims that only one letter was sent by Plaintiff to Defendant "raising issues regarding her discovery responses for the first and only time," allegedly not satisfying the Federal Rule 37 conferral requirements. *Id.* at 1, 3.

The Court finds that the conferral argument would have been initially convincing, but that Plaintiff and Salmon have since neutralized the issue by their ongoing discussions regarding the substantive requests in the motion. As noted above, Federal Rule 37 requires that the party moving to compel discovery should confer in good faith with the opposing party. FED. R. CIV. P. 37(a)(1). Salmon claims, and Plaintiff admits, that a single letter was all that was sent to Salmon. (Docs. 95 at 1; 100 at 3). Plaintiff further argues that Salmon's counsel acknowledged the letter but failed to respond for five weeks, and that he later gave Salmon's counsel a phone call to inform him of the need to respond. (Doc. 103 at 2). This is insufficient to demonstrate a good faith attempt at resolving the issue before filing a motion. Plaintiff's Certificate of Conference indicates that he sent a letter on September 20, 2021, but does little more than explain that Salmon's counsel failed to address the letter. (Doc. 95 at 1; *see also* Doc. 100-1 at 54 (Plaintiff's counsel writing to Salmon explaining that her responses "remain incomplete," and that "several of [Salmon's] objections do not appear well taken")). Elsewhere, Plaintiff's alleged phone call marks the second and seemingly last attempt to resolve the discovery dispute without judicial intervention, i.e., before the instant motion was filed. The *Barcosh* court provided little detail as to the movant's evidence, but it did indicate that it was convinced that Plaintiff adequately demonstrated that the defendants "were not acting in good faith

considering their prior conduct and repeated refusal to provide the same information and documents in the related action." *Barcosh*, 2008 WL 4286506, at *1. Plaintiff asserts no such similar conduct here, but merely that Salmon's counsel did not respond to the letter.

The Court finds that this, along with Plaintiff's sole alleged call[5] placed eight days after the letter was sent, and four weeks before the motion was filed, is insufficient to demonstrate that Plaintiff attempted to establish a two-way communication. It is furthermore not immediately clear here that "conferring during the month . . . between service and filing the [motion] . . . would have been a waste of time and would not possibly have eliminated or narrowed the parties' disputes here." *Seastrunk v. Entegris*, No. 3:16-cv-2795-L, 2017 U.S. Dist. LEXIS 206901, at *28, 2017 WL 6406627, at *10 (N.D. Tex. Dec. 15, 2017). However, Plaintiff's Notice on Salmon indicates that Plaintiff has since conferred with Salmon, and was able to resolve most of the disputed issues. (Doc. 117). The Court observes that Plaintiff's Notice on Salmon, as well as Salmon's Motion to Supplement (Doc. 128) addressing much of the requested items from Interrogatory 8 and Production 4, negates much of the extrajudicial concern which Federal Rule 37 sought to address. Therefore, although Court agrees with Plaintiff that gamesmanship and prolonged delay are inherent concerns, it does not find that a call combined with a single letter over a five-week period sufficient. Because Plaintiff and Salmon have managed to confer with each other since Plaintiff filed his motion, and most of the issues have been resolved, the Court believes it clear that the two parties are unable to settle the dispute over the remaining discovery items, thereby fulfilling the purpose of judicial review of the instant motion to compel. *Accord Anzures*, 300 F.R.D. at 316 (refusing to consider motions to compel until after "each item . . . ha[s] been discussed in good faith in an effort to resolve it").

    *b. Interrogatory 8*

---

5. Salmon's counsel disputes that Plaintiff attempted to follow-up with a phone call or other communication in the first place. (Doc. 100 at 3).

The Court holds that Salmon's objections to Interrogatory 8 are improper and unjustified in their entirety. Plaintiff's Interrogatory 8, regarding Salmon's devices and accounts used for electronically stored information, reads:

> For each device and account identified in the previous interrogatory, describe all searches (all search programs, all databases searched, and all search terms) that you performed to produce your responses to written discovery served on you during this lawsuit.

(Doc. 95-1 at 9).[6] Salmon objected, incorporating her objections to Interrogatory 7 (Doc. 95-2 at 7–8), and Plaintiff now challenges, Interrogatory 8 as follows: vagueness, boilerplate, and the privilege objection. The Federal Rules of Civil Procedure "dictate that a responding party must describe what portions of the interrogatory or document request it is, and what portions it is not, answering or responding to base on its objections and why." *Id.*; *see also Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 581 (N.D. Tex. 2018) (noting that "[o]bjections to discovery must be made with specificity"). With regards to specific objections, "[g]eneral or boilerplate objections are invalid," since the responding party has an obligation "to explain and support its objections." *Lopez*, 327 F.R.D. at 578; *see also* FED. R. CIV. P. 34(b)(2). When a party fails to present an affidavit or other evidentiary proof supporting their resistance to discovery, "as a general matter, [the failure] makes such an unsupported objection nothing more than unsustainable boilerplate." *Heller*, 303 F.R.D. at 490.

Objections relating to "vague or ambiguous" discovery requests also present the burden of showing such vagueness or ambiguity. For this demonstration, the "responding party should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories" and, "[i]f necessary to clarify its answers, . . . may include any reasonable definition of the term or phrase at issue." *Id.* at 491. If the responding party believes a request is vague, it should "attempt to obtain clarification prior to objecting on this ground." *Consumer Elecs. Ass'n v.*

---

6. Plaintiff states that he has agreed "to limit this request to apply only to devices and accounts used to conduct [Salmon's] H-2A business." (Doc. 103 at 5).

*Compras & Buys Mag., Inc.*, No. 08-21085-CIV, 2008 U.S. Dist. LEXIS 80465, at *6, 2008 WL 4327253, at *1 (S.D. Fla. Sept. 18, 2008). Lastly, privilege objections can only be asserted as to items that are outside the proper scope of discovery. FED. R. CIV. P. 26(b)(1). However, the party doing such must: "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *Lopez*, 327 F.R.D. at 580 (citing FED. R. CIV. P. 26(b)(5)(A)).

Here, the Court finds that Interrogatory 8 is not so vague or ambiguous "as to be incapable of reasonable interpretation." *Heller*, 303 F.R.D. at 492. While Salmon does indicate which phrase she believes is vague, the phrase "in detail" is itself not vague, and most reasonably admonishes Salmon to provide descriptions of her electronic searches which go beyond conclusory statements. *Accord Ficep Corp. v. Haas Metal Eng'g, Inc.*, No. 14-243-CM, 2015 U.S. Dist. LEXIS 16483, at *11, 2015 WL 566988, at *4 (D. Kan. Feb. 11, 2015). Additionally, while Salmon is correct that Federal Rule 33 does not *require* her to propose her own definition (Doc. 100 at 5), Salmon made no effort to respond to the answer with, as would satisfy her concerns, "any reasonable definition of the term." *See McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 694 (D. Kan. 2000). Federal Rule 33 does indeed allow an attempt to clarify with Plaintiff what the challenged term means, which Salmon has not attempted to do. (*See* Doc. 95-2 at 7–8); *see also McCoo*, 192 F.R.D. at 694. Therefore, the Court finds that Interrogatory 8's "in detail" language is not vague, and Salmon's objection is inappropriate and unjustified. Further, the objection appears to be boilerplate as well, since Salmon provided no explanation as to why she believed it was vague, ambiguous, or burdensome. *See Lopez*, 327 F.R.D. at 578. In Salmon's objection, she also fails to indicate why "in detail" would be an unduly burdensome or overly broad request, which in the absence of evidence transforms the objection into unsustainable boilerplate. *Heller*, 303 F.R.D. at 490. Therefore, the Court finds that Salmon's

boilerplate objections, particularly "overbroad and unduly burdensome," to Interrogatory 8 are improper.

As to the specific flaw of privilege, Salmon's objection fails yet again. Salmon merely objected with a conclusory statement that Interrogatory 8 violates several asserted privileges. This is plainly insufficient to satisfy the requirements of Federal Rule 26, which requires significantly more detail than a mere conclusion. *See Lopez*, 327 F.R.D. at 578; *see also Redus v. Univ. of Incarnate Wood*, No. SA-14-CA-509-DAE, 2014 WL 12815471, at *5 (W.D. Tex. Oct. 17, 2014). Therefore, the Court finds that Salmon's privilege objections to Interrogatory 8 are insufficient and improperly asserted.

Therefore, the Court finds that Salmon's challenged objections to Interrogatory 8 lack substantial justification. Accordingly, Plaintiff's Motion to Compel Written Discovery from Defendant Genesis Venegas Salmon as to Interrogatory 8 is **GRANTED**. (Doc. 95). Additionally, the Court **ORDERS** Salmon to provide answers to Interrogatory 8 within **fourteen (14) days** following the entry of this Order.

　　　　*c.   Production 4*

The Court concludes that Salmon's objections to Production 4 are in major part improper and unjustified. Plaintiff's Production 4 reads:

> Produce all documents, including email and text messages, that concern any business communication (meaning any communication that was not strictly personal in nature) between you and any of the following persons, whether by name, nickname, vendor number, or any other identifier, after [J]anuary 1, 2015:

(Doc. 95-1 at 11).[7] This request is followed by a list of several private and Government individuals. Salmon made objections to Production 4, to which Plaintiff asserts challenges, in the following categories: vagueness, proportional, boilerplate, relevancy, and third-party information.

---

7. Plaintiff exclaims that he has agreed "to limit this request to business communications, and to exclude personal communications." (Doc. 103 at 5).

As with Interrogatory 8, the Court finds that the phrase "persons, whether by name, nickname, vendor number, or any other identifier" has, in the context of the entire request, a reasonably identifiable meaning: *name*. (Doc. 95-3 at 5). The reasonable and common sense understanding of the challenged phrase indicates that Plaintiff is requesting communications between Salmon and any of the individuals in the list *regardless of how Salmon personally may refer to them*. The Court finds that the pertinent phrase in Production 4 holds an obvious, reasonable definition, and is not vague, and that therefore Salmon's objection lacks justification.

Like Interrogatory 8, Salmon merely asserts that Production 4 is overly broad, but unlike Interrogatory 8, she does provide some explanation, arguing that it is not reasonably limited in scope or the selected individuals. (Doc. 95-3 at 7–8). The "overly broad" objection resembles the also-asserted "proportionality" objection, and therefore both will be considered in tandem as "proportionality." It is true that all discovery requests must be "proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). However, parties resisting discovery based on proportionality still bear the burden of showing that "discovery fails the proportionality calculation," which they must do "by coming forward with specific information to address . . . the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017) (citing FED. R. CIV. P. 26). Here, the Court finds that Salmon has failed to do so. Salmon merely states in a conclusory manner that the request is not reasonably limited in "scope, time period or individuals relevant to this case," without explaining how the request for "documents . . . concern[ing] any business communication . . . between [Salmon] and any of the [listed] persons" is beyond the scope of the claim to be asserted here: that Salmon was involved in the alleged RICO enterprise. (Docs. 95-3 at 5; 12-1 at 22–23). Without the required

explanation, Salmon's objection can only be unsustainable boilerplate. Therefore, the Court finds that Salmon's proportionality objection to Production 4 is mere boilerplate and unjustified.

Salmon also claims it is not relevant; this is also an improper boilerplate objection, since she again fails to explain why the communications requested would not be relevant. Thus, the Court additionally holds that Salmon's relevancy objection to Production 4 is improper boilerplate and unjustified. With regards to the specific flaw, Venegas asserted that Plaintiff's request "assumes [she] has legal obligations which she does not have." (Doc. 95-3 at 6). The Court has found no legal basis for this objection, and Salmon failed to cite to or reference any case law supporting it. Therefore, the Court finds that Salmon's "legal obligations" objection lacks sufficient justification.

The last objection is Salmon's relates to third-party authorization. (Doc. 110-1 at 44–45). Salmon provided no authority supporting the premise that third-party recipients of emails and texts which the responding party herself sent must authorize the responding party to disclose them. To any extent that this is true, it should have been asserted as a privilege. Construing this as a privilege, Salmon identified not once which communications, to whom they were sent, or from whom they were received, or even which mode of communication was used. Salmon's objection accordingly does not meet the standard of Federal Rule 26, as Plaintiff cannot by the objection's words assess the veracity of the claim of privilege. Therefore, the Court finds no justifiable basis for Salmon's "third-party authorization" objection to Production 4.

Therefore, the Court finds that Salmon's challenged objections to Production 4 lack substantial justification. However, the Court believes the required answers Production 4 should be limited to the period beginning January 1, 2015, up until the beginning of the instant lawsuit on December 19, 2019. Accordingly, Plaintiff's Motion to Compel Written Discovery from Defendant Genesis Venegas Salmon as to Production 4 is **GRANTED IN PART** and **DENIED IN PART**. (Doc. 95). Accordingly, the Court **ORDERS** Salmon to produce documents responsive to Production

4 for the period from **January 1, 2015, to December 19, 2019**, within **fourteen (14) days** following the entry of this Order.

In conclusion, Salmon's resistance to the Interrogatory 8 and Production 4 discovery requests is unreasonable, and she must be required to comply. Accordingly, Plaintiff's Motion to Compel Written Discovery from Defendant Genesis Venegas Salmon is **GRANTED IN PART** and **DENIED IN PART**. (Doc. 95). Salmon's objections to Interrogatory 8 and Production 4 are **OVERRULED**. It is **ORDERED** that Salmon respond to request in Interrogatory 8, to the extent that the request applies only to devices and accounts used by Salmon to conduct her alleged H-2A business. It is further **ORDERED** that Salmon produce the information and documents requested in Production 4, beginning with those responsive documents from **January 1, 2015**, up until the filing of this case on **December 19, 2019**, and to the extent that the documents are business communications and exclude otherwise personal communications. Additionally, it is **ORDERED** that Venegas provide the answers and documents within **fourteen (14) days** following the entry of this Order. Plaintiff and Salmon should schedule a deposition for a time convenient to Plaintiff once discovery items relating to Interrogatory 8 and Production 4 have been provided.

**C. Plaintiff's Motion for Leave to Continue Deposition of Defendant Fermin Venegas, III, and to Compel Responsive Answers (Doc. 108)**

Plaintiff's Motion for Leave to Continue Deposition of Defendant Fermin Venegas, III, and to Compel Responsive Answers is **GRANTED IN PART** and **DENIED IN PART**. (Doc. 108). Plaintiff argues[8] that Venegas's conduct during his deposition warrants a continuance under Federal Rules of Civil Procedure 30(d)(1) and 37(a). Plaintiff offers five reasons for a continuance. First, Plaintiff claims that Venegas disobeyed the Court's October 2020 Order which required Venegas "to describe each piece of heavy equipment used in his fencing business." *Id.* at 2; (*see also* Doc. 27).

---

8. Plaintiff does not thoroughly brief the request to compel answers. (*See generally* Doc. 108).

Second, Plaintiff claims that Venegas refused to answer several questions. *Id.* at 2–3. Third, Plaintiff asserts Venegas "evaded answering direct questions," and fourth, that he "rambled nonresponsibly." *Id.* at 3. Fifth, Plaintiff observes that Venegas produced documents after the deadline of May 17, 2021, and only after the deposition, which limited Plaintiff's ability to depose Venegas. *Id.* at 4.

Federal Rule 30 provides that, "the only ground for [a Federal Rule 30(d)(3)] motion to limit or terminate the deposition is that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." *Mayberry v. Wal-Mart La., LLC*, No. 14-cv-478, 2015 WL 420284, at *3 (W.D. La. Jan. 29, 2015) (citing FED. R. CIV. P. 30(d)(3)). The nonmovant "bears the burden of showing grounds under [Federal] Rule 30(d)(3) to terminate her deposition." *Holmes v. North Tex. Health Care Laundry Coop. Assoc.*, No. 3:15-cv-2117-L, 2016 WL 2609995, at *4 (N.D. Tex. May 6, 2016).

Federal Rule 30 further exclaims that, "[u]nless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours." FED. R. CIV. P. 30(d)(1). At the same time, "[t]he court must allow additional time consistent with [Federal] Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." FED. R. CIV. P. 30(d)(1). Under this rule, "the Court may extend the limits on depositions for good cause." *Holmes*, 2016 WL 2609995, at *3; *see also Kleppinger v. Tex. Dep't of Transp.*, 283 F.R.D. 330, 333 (S.D. Tex. 2012). Federal Rule 30(d)(2) also "provides various procedural mechanisms for limiting a deposition." *South La. Ethanol, L.L.C. v. Fireman's Fund Ins. Co.*, Nos. 11-2715, 12-0379, 2013 WL 1196604, at *2 (E.D. La. Mar. 22, 2013). Under Federal Rule 30(d)(3)(B), "[t]he court may order that the deposition be terminated or may limit its scope and manner as provided in [Federal] Rule 26(c)." *Holmes*, 2016 WL 2609995, at *3. If such termination occurs, "the deposition may be resumed only by order of the court where the action is pending." *Id.* (citing FED. R. CIV. P. 30(d)(3)(A)). However, "[b]efore extending the duration of depositions, a court must be satisfied that the moving party has shown good cause." *VeroBlue Farms USA Inc. v.*

*Wulf*, No 3:19-cv-764-X, 2021 WL 5176839, at *10 (N.D. Tex. Nov. 8, 2021) (internal quotation marks and citation omitted). Therefore, the movant "bears the burden of showing good cause under [Federal] Rule 30(d)(1) to extend the limits of a deposition beyond 1 day of 7 hours and bears the burden on any [Federal] Rule 30(d)(2) motion that it makes." *Holmes*, 2016 WL 2609995, at *4 (citing *Kleppinger*, 283 F.R.D. at 333).

In this instance, the primary issue is whether Venegas's conduct warrants an extension of the default deposition time allotted by Federal Rule 30, and additionally whether an additional deposition should count towards the fifteen-deposition maximum previously allotted by the Court. (Doc. 68 at 1). Here, Plaintiff's deposition was purportedly cut short after Venegas "walked out of his deposition after seven hours, claiming that a court order would be necessary for him to return." (Doc. 108 at 1). Clearly, Venegas "unilaterally terminated" the deposition. *South La. Ethanol*, 2013 WL 1196604, at *4. Thus, Plaintiff proposes a "continuation deposition" entailing another seven-hour day of deposition of Venegas. (Doc. 118 at 5); *see also South La. Ethanol*, 2013 WL 1196604, at *1.

The Court finds that Venegas's conduct warrants a continuance. First, Plaintiff is correct in that the Court ordered Venegas "to describe each piece of heavy equipment used in his fencing business." (Doc. 108 at 2). While the Court did not expressly state such in its order, simple logical connections built between the Court's October 20 Order (Doc. 27), and the Plaintiff's Original Motion to Compel (Doc. 15), reveals that Interrogatory 8 entails a nearly identical request as the request at issue. (Doc. 15-1 at 9–10). Thus, at the time, because the information had still not been produced, Plaintiff was reasonable in his questioning Venegas about his non-compliance during the deposition. (Doc. 108 at 2 (estimating "16.5% of the deposition . . . was consumed trying to get . . . Venegas to answer why he had not complied with the Court's order")). Furthermore, the Court made no indication in its order of the intent to limit the information to be produced to only the equipment purchased after Plaintiff's employment. (Doc. 27). If Venegas has complied with the Court's order by November 6, 2020, which was the deadline the Court provided in the October 20 Order, *id.* at 3,

Plaintiff would not have desired to waste time inquiring about his non-responsiveness. Therefore, this argument supports Plaintiff's good cause.

The Court further observes that Venegas refused to answer some distinct lines of questioning. Venegas supposedly refused to answer questions about his own and his wife, Genesis Venegas Salmon's, access to their financial records, as well as questions relating to the accuracy of the IRS gross income reports, his business's largest grossing fence customers, his personal "best estimate" of profit from his shearing operations, his timekeeping practices, and the object identified in an exhibit presented to him. *Id.* Closer inspection reveals that all of these instances encompassed in some instances up to five pages' worth of transcript testimony. As to the financial records question, Venegas did not answer the question directly, but seemed merely to misunderstand what Plaintiff was asking. (Doc. 108-1 at 56). For the IRS gross income reports, however, Plaintiff asked Venegas whether there was any reason to doubt the accuracy of the tax returns, which Venegas refused to answer. *Id.* at 61. The question regarding Venegas's largest grossing fence customers, on the other hand, was answered by Venegas stating that he did not know "who pays [him] the most." *Id.* at 71. For his best estimate of profit, Venegas as well answered that he "did not know." *Id.* at 74. Regarding his current timekeeping practices, Venegas also stated that he did not know what the differences between two sets of timekeeping practices are. *Id.* at 224. Lastly, for the exhibit line of questioning, Venegas identified certain objects in the exhibit as "trash," which may very well be vague. *Id.* at 228.

Thus, only the first (financial records) and second (IRS gross income) questions did Venegas refuse or not answer directly, with the potential for the sixth (exhibit identification) question. A deponent can refuse to answer a question "only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under [Federal] Rule 30(d)(3)." FED. R. CIV. P. 30(c). Venegas presented no such motion at the time, no Court order limited the scope of the deposition, and no privilege was asserted. Therefore, this factor slightly weighs in favor of good cause as to the three refused questions.

Taking the third and fourth arguments combined, the Court holds that Venegas evaded and rambled in responding to Plaintiff's questions, in particular those concerning the profit he made for the labor of three men, whether foreign workers are employed in the summer, and whether others besides Plaintiff were mechanics. (Doc. 108 at 3). As to the first question, it is clear that Venegas supplied unnecessary, irrelevant, and often degrading responses to Plaintiff's questions. (Doc. 108-1 at 96–97 (discussing lawyers in an answer to a question about profit for manual labor)). For the second question, Venegas again made several roundabout and euphuistic explications concerning irrelevant characteristics about employment generally as well as the law. *Id.* at 107–09. For the last question, Venegas again clearly spoke about irrelevant and bloated topics unrelated to the question asked. *Id.* at 195–97. Whether an answer "is evasive depends on the particular circumstances of the questioning." *See, e.g.*, *Southern U.S. Trade Ass'n v. Guddh*, 565 F. App'x 280, 281 (5th Cir. 2014). Here, it is indubitable that Venegas evaded all three questions and refused to directly answer them without pettifogging his answers. Elsewhere, Venegas rambled incoherently, and sometimes did not respond to the question within several pages of it having originally been asked. Therefore, these two arguments also support good cause.

Fifth, even assuming *arguendo* that Venegas's conduct did not warrant an extension under Federal Rules 26 and 30, the Court is convinced that Venegas provided to Plaintiff new, responsive information only the day before the deposition, and waited to designate it as such until after the deposition occurred. Venegas admitted that a "number of documents" were responsive and not already in Plaintiff's possession at the time of the turnover; although Venegas characterizes the amount as a "very limited number," Plaintiff is still entitled to question Venegas on the additional information. (Doc. 115 at 3). "Courts have allowed parties to reopen depositions when new information comes to light that creates the need for further questioning," which can come in the form of "the production of new documents." *VeroBlue Farms*, 2021 WL 5176839, at *10. Plaintiff asserts that nearly "two thousand pages of responsive documents" were provided post-deposition; Venegas

admits that new information was provided, but contends that only some of the post-deposition

documents "had not been previously produced in a different format and . . . are responsive to

Plaintiff's discovery request." *Id.* at 5. "If a deposition is reopened because of newly discovered

information, the court should limit the deposition to questions related to this information." *VeroBlue*

*Farms*, 2021 WL 5176839, at *10 (citation omitted). Given the partial admission by Venegas that

new, responsive documents were submitted post-deposition, it is apparent that good cause has been

established, and a new deposition is warranted. This deposition, however, should only be limited to

questioning related to the new information.

Therefore, another deposition of Venegas is in order. However, this deposition should

constitute a new deposition. Accordingly, Plaintiff's Motion for Leave to Continue Deposition of

Defendant Fermin Venegas, III, and to Compel Responsive Answers is **GRANTED IN PART** and

**DENIED IN PART**. (Doc. 108). It is **ORDERED** that Venegas appear for a **two-hour** deposition at

a time and place agreed to with Plaintiff within **thirty (30) days** following the entry of this Order. It

is further **ORDERED** that this deposition will be limited in scope to questioning pertaining only to

matters not already covered and answered during the previous deposition. Additionally, it is

**ORDERED** that this deposition will constitute as one of Plaintiff's fifteen allotted depositions per

the Court's prior Order. (Doc. 68).

**D.  Plaintiff's Motion to Compel Written Discovery from Defendant Fermin Venegas, III (Doc. 113)**

Plaintiff's Motion to Compel Written Discovery from Defendant Fermin Venegas, III, is

**GRANTED IN PART** and **DENIED IN PART**. (Doc. 113). Plaintiff, pursuant to Federal Rule of

Civil Procedure 37(a)(3)(B), requests "one additional day to inspect . . . paper documents" and "all of

[Defendant Venegas's] accountant's responsive electronically stored information." *Id.* at 3.

In the context of a request for production of documents, Federal Rule 34 "requires that '[t]he

request . . . describe with reasonable particularity each item or category of items to be inspected.'"

*Walls v. Ford Motor Co.*, No. 1:20cv98, 2021 U.S. Dist. LEXIS 82757, at *16, 2021 WL 1723154, at *5 (M.D.N.C. Apr. 30, 2021) (citing FED. R. CIV. P. 34(b)(1)(A)). The response must accordingly "permit[ inspection] as requested or state with specificity the grounds for objecting to the request, including the reasons." *Id.* (quoting FED. R. CIV. P. 34(b)(2)(B)).

Federal Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production or answers against another party when the responding party has failed to produce documents or allow for inspection requested under Federal Rule 34. See FED. R. CIV. P. 37(a)(3)(B)(iii)–(iv). The provision of an incomplete disclosure or response to a request for production constitutes a "failure to disclose" for the purposes of Federal Rule 37(a). FED. R. CIV. P. 37(a)(4). Additionally, a motion to compel inspection "may be made if . . . a party fails to respond that inspection will be permitted." *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 227, 243 (M.D.N.C. 2010) (quoting FED. R. CIV. P. 37(a)(3)(B)).

In addition, a party making a disclosure under, inter alia, a request for production, "must supplement or correct its disclosure or response . . . in a *timely manner* if the party learns that in some way the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." FED. R. CIV. P. 26(e) (emphasis added). Thus, if later-obtained items are covered by the request for production, Federal Rule 26(e) creates "a continuing obligation . . . to disclose them." *See Hernandez v. Results Staffing, Inc.*, 907 F.3d 354, 362 (5th Cir. 2018).

The primary issues in this instance are whether Plaintiff was afforded an opportunity to inspect the produced documents in time for Venegas's deposition, and whether the post-deposition designation was timely. As a preliminary matter, the Court did not merely observe an "informal request" (Doc. 119 at 3–4) that Venegas produce the accounting-related documents in question. Plaintiff on the other hand is correct that in the October 2020 Order, the Court *ordered* Venegas to, in conjunction with Plaintiff's Original Motion to Compel, which included Requests for Production 13

and 14 (hereafter, "Production 13 and 14") (Doc. 15-1 at 21–22), "produce copies of all checks deposited into his bank account . . . by November 6, 2020." (Doc. 113 at 2; Doc. 27). It was not until September 2, 2021, that Venegas designated the documents as responsive to Production 13 and 14 from the Court's October 2020 Order. (*See* Doc. 113-1 at 13).

As for timeliness, Venegas claims that the documents from Production 13 and 14 were not in his own "possession, custody, or control," his bank, or his accountant John Stokes' records. (Doc. 119 at 8). According to Venegas's counsel, David Mirazo, he assisted Venegas in attempting to obtain and produce the documents, and "produced the records as soon as they were received." (Doc. 115-1 at 6). Nowhere in Mr. Mirazo's affidavit does he explain which day he received them. Thus, the Court cannot be certain that Venegas or his counsel acted with reasonable diligence in procuring and producing the documents for Production 13 and 14.

If it is assumed *arguendo* he received the documents on the day they were provided to Plaintiff, the Court finds it unlikely that, even though Mr. Mirazo supposedly had to utilize a "third-party depository" to acquire the documents, it would take nearly eleven months to acquire them. (Doc. 119 at 8). If Mr. Mirazo or Venegas had received the documents earlier than September 1, 2021, but did not provide them or allow for inspection, Venegas would surely have "violate[d] the timeliness requirement of Federal Rule 26(e)." *See Walls v. Ford Motor Co.*, 2021 U.S. Dist. LEXIS 82757, at *65, 2021 WL 1723154, at *21. Venegas designated in his supplementary discovery designations as responsive the documents in Production 13 and 14 only on September 5, 2021, four days after Venegas had produced them to Plaintiff. (Doc. 113-1 at 13). Venegas's counsel admits, however, that he was well aware of the responsive character of the documents long before they were received. (Doc. 115-1 at 5–6). Thus, with the knowledge that September 2, 2021, would involve a deposition with Venegas, Mr. Mirazo still waited until *after* the deposition to provide a designation for the documents even though they were produced to Plaintiff on September 1, 2021. The Court

finds this several days' delay deems the supplementary designations to be untimely under Federal Rule 26(e).

The Court notes that it would be entirely inequitable for Venegas to be allowed to engage in such "gamesmanship in the timing of its supplemental productions . . . less than one business day before the . . . deposition." *Walls v. Ford Motor Co.*, 2021 U.S. Dist. LEXIS 82757, at *21, *64, 2021 WL 1723154, at *7, *20. Although neither Plaintiff nor Venegas initially specified when production of the documents requested in Production 13 and 14, or even their inspection, would occur, "the [Federal] Rules do not countenance the indefinite possibility of later production." *Id.* at *43, 2021 WL 1723154, at *14. Even if it is true that Venegas's counsel only received the responsive documents on September 1, 2021, and produced them to Plaintiff immediately, Venegas's delay in designating the documents as responsive prevented Plaintiff from, for example, seeking a continuance of the deposition until review could be conducted or ensuring that the documents contained no new responsive information which may alter the trajectory of his deposition.

While it may be true that at the time of the October 2020 Order Venegas was not in possession of the documents he eventually provided to Plaintiff and designated as responsive to Production 13 and Production 14, when Venegas received them or acquired possession or control of them, they should have been designated within a reasonable time. Thus, "the above-mentioned failure[] cost Plaintiff additional time and expense [in filing this motion], hindered preparation for the . . . deposition, and contributed to Plaintiff's request" to have another attempt at inspecting the documents. *Id.* at *66. When a party "withholds materials otherwise subject to disclosure under [Federal] Rule 26 or pursuant to a discovery request," Federal Rule 37 authorizes the Court to compel the withholding party to respond. *Id.* at *16. The Court finds that this also extends to a party's failure to provide reasonable inspection. *Cf. id.* at *65–*67 (observing the possibility that the nonmovant's actions may warrant further inspection opportunities for late-provided documents).

Venegas's conduct and apparent gamesmanship warrants Plaintiff having a second gander at inspection. However, this request will not be unlimited; Venegas will only need to provide time to Plaintiff for inspection to the extent that the documents are from **January 1, 2015, through December 19, 2019**, the inception of the instant lawsuit. Accordingly, Plaintiff's Motion to Compel Written Discovery from Defendant Fermin Venegas, III, is **GRANTED IN PART** and **DENIED IN PART**. (Doc. 113). It is **ORDERED** that Venegas provide Plaintiff the opportunity to inspect the newly produced documents dated from the period of **January 1, 2015, through December 19, 2019**, within **fourteen (14) days** of the entry of this Order. It is further **ORDERED** that, in the **alternative**, Venegas provide Plaintiff with copies of all such documents within **fourteen (14) days** following the entry of this Order.

### III.   CONCLUSION

Based on the foregoing discussion, the following is **ORDERED** that Defendants' Motion to Compel Plaintiff's In-Person Deposition in El Paso, Texas is **GRANTED IN PART** and **DENIED IN PART**. (Doc. 93). It is further **ORDERED** that Plaintiff appear for a **four-hour, in-person deposition** in Acuna, Mexico, to be scheduled for a date within **forty-five (45) days** of the entry of this Order.

It is further **ORDERED** that Plaintiff's Motion to Compel Written Discovery from Defendant Genesis Venegas Salmon is **GRANTED IN PART** and **DENIED IN PART**. (Doc. 95). Additionally, the Court **ORDERS** Salmon to provide answers to Interrogatory 8 within **fourteen (14) days** following the entry of this Order. The Court also **ORDERS** Salmon to produce documents responsive to Production 4 for the period from **January 1, 2015, to December 19, 2019**, within **fourteen (14) days** following the entry of this Order.

It is further **ORDERED** that Plaintiff's Motion for Leave to Continue Deposition of Defendant Fermin Venegas, III, and to Compel Responsive Answers is **GRANTED IN PART** and **DENIED IN PART**. (Doc. 108). The Court further **ORDERS** that Venegas appear for a **two-hour**

deposition at a time and place agreed to with Plaintiff within **thirty (30) days** following the entry of this Order. It is also **ORDERED** that this deposition will be limited in scope to questioning pertaining only to matters not already covered and answered during the previous deposition. Additionally, it is **ORDERED** that this deposition will constitute as one of Plaintiff's fifteen allotted depositions per the Court's prior Order. (Doc. 68).

It is further **ORDERED** that Plaintiff's Motion to Compel Written Discovery from Defendant Fermin Venegas, III, are **GRANTED IN PART** and **DENIED IN PART**. (Doc. 113). It is **ORDERED** that Venegas provide Plaintiff the opportunity to inspect the newly produced documents dated from the period of **January 1, 2015, through December 19, 2019**, within **fourteen (14) days** of the entry of this Order. It is further **ORDERED** that, in the **alternative**, Venegas provide Plaintiff with copies of all such documents within **fourteen (14) days** following the entry of this Order.

It is so **ORDERED**.

SIGNED this 20th day of December, 2021.

DAVID B. FANNIN
UNITED STATES MAGISTRATE JUDGE