# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# PECOS DIVISION

| | |
|---|---|
| **SERGIO TIJERINA-SALAZAR,** § | |
| *Plaintiff,* § | |
| § | |
| v. § | PE:19-CV-00074-DC-DF |
| § | |
| **FERMIN VENEGAS, III,** *et al.*, § | |
| *Defendants.* § | |

## ORDER

BEFORE THE COURT are Defendants Fermin Venegas (individually, "Venegas"), Fermin Venegas Shearing, Inc. (individually, "FVS"), and Venegas Contractors, Inc. (individually, "VCI") (collectively, "Defendants") Motion to Exclude Expert Opinions of Dr. Philip Martin (hereafter, "Motion to Exclude Dr. Martin") (Doc. 147) and Motion to Exclude Expert Opinions of Antonio Rodriguez (hereafter, "Motion to Exclude Rodriguez") (Doc. 149). This matter is before the undersigned United States Magistrate Judge through a standing order of referral pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration, Defendants' Motions to Exclude shall be **GRANTED**. (Docs. 147, 149).

### I. BACKGROUND

This case stems from Plaintiff Sergio Tijerina-Salazar's ("Plaintiff") work for Defendants as an H-2A visa recipient. (Doc. 47 at 1–2). Plaintiff alleges he was employed by Defendants as a heavy equipment mechanic between 2011 and 2018. *Id*. On December 19, 2019, Plaintiff filed suit against Defendants for numerous breaches of contract and violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* (Doc. 1 at 1). On June 16, 2020, Plaintiff filed a Motion for Leave to File Plaintiff's First Amended Complaint, seeking to inter alia add claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* against all

defendants based on events that occurred after Plaintiff's Original Complaint was filed. (Doc. 12). The Court granted Plaintiff's First Motion for Leave on September 21, 2020. (Doc. 20).

On January 31, 2022, Defendants filed the Motions to Exclude. (Docs. 147, 149). Following the Court's granting of an extension of time to file a response, Plaintiff produced a Response to each of the Motions to Exclude on March 14, 2022. (Docs. 167, 168). Defendants also produced a Reply to each of the responses on March 25, 2022. (Docs. 172, 173). The Court held a hearing on the two Motions to Exclude on April 8, 2022. (Docs. 183, 187). Accordingly, this matter is now ready for disposition.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 provides the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Federal Rule 702 requires that experts be "qualified" through "knowledge, skill, experience, training, or education." FED. R. EVID. 702. "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). However, an expert need not be highly qualified to testify, as "[d]ifferences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.*

Federal trial judges have an obligation to serve as "gatekeepers" and ensure that expert testimony is both reliable and relevant. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)

2

(discussing scientific expert testimony); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–48 (1999) (extending *Daubert* to all expert testimony).

The reliability prong of the *Daubert* analysis "mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). The party offering the expert testimony has the burden of establishing the reliability of the expert's testimony. *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 (5th Cir. 2016). In *Daubert*, the Supreme Court offered a non-exclusive list of factors for judges to consider in determining reliability: (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the theory or technique's operation; and (4) whether the theory or method has been generally accepted in the scientific community. *See Daubert*, 509 U.S. at 593–94. The *Daubert* standard is flexible and the *Daubert* factors may or may not be pertinent to a particular case. *Kumho Tire Co.*, 526 U.S. at 150. Under *Daubert* and Federal Rule 702, judges have "broad discretion to determine whether a body of evidence relied upon by an expert is sufficient to support that expert's opinion." *Sims*, 839 F.3d at 400 (quoting *Johnson*, 685 F.3d at 458–59).

Experience, on its own, may qualify an expert's opinion, but the expert's experience must still undergo the separate reliability test. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002); *see also United States v. Evers*, No. 3:19-CR-250, 2021 U.S. Dist. LEXIS 157988, at *18, *25–*27, 2021 WL 3710735, at *6, *8–*9 (M.D. Pa. Aug. 20, 2021). If a proponent does not establish these factors through more than just experience, the Court must exclude the testimony. The relevancy prong of the *Daubert* analysis requires judges to determine if the expert testimony will assist the trier of fact. "To be relevant, the expert's 'reasoning or methodology [must] be properly applied to the facts in issue.'" *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019) (alteration in original) (quoting *Johnson*,

685 F.3d at 459). Expert testimony is limited to those situations where "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a).

The touchstone of both prongs of the *Daubert* analysis is "whether the expert's opinion will assist the trier of fact." *Puga*, 922 F.3d at 293. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility." *Id.* at 294. Credibility determinations remain the province of the jury. *See id.* "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### III. ANALYSIS

After review of the parties' filings and the applicable case law, the Court held a hearing on April 8, 2022 ("April 8 hearing"). At the hearing, the Court postponed ruling on either of the pending discovery-based motions, and now **ORDERS** the following:

**A.  Defendants' Motion to Exclude Expert Opinions of Dr. Philip Martin (Doc. 147)**

Defendants' Motion to Exclude Dr. Martin is **GRANTED**. (Doc. 147). Defendants cry that the three opinions of Dr. Philip L. Martin ("Dr. Martin") should be excluded as they are unreliable and speculative, rely on improper methodology, fall outside of Dr. Martin's expertise, and are irrelevant and would not be helpful to the jury. (*See* Doc. 147 at 1–2). Specifically, Defendants claim that Dr. Martin's first opinion—that "Venegas almost certainly failed to pay his H-2A workers for all of the hours that they worked"—is flawed due to its reliance on non-Texas surveys as well as averages, and is also based upon a reading of Venegas's 2017 federal tax returns, which he is unqualified to opine on and is keyed to a single year. *Id.* Defendants exclaim that this opinion undercuts their actual 2017 gross income and H-2A labor costs, as an affidavit by Defendants' accountant John Stokes supports, thereby making the report unreliable. *See id.* at 10. Defendants

contend Dr. Martin's second opinion—that "Venegas underpaid H-2A workers by using an incorrect wage rate"—is an improper legal opinion concerning federal regulations and statutes, as well as administrative law judges' opinions. *See id.* at 14–15. Defendants argue that Dr. Martin's third opinion—that "Venegas's use of H-2A workers harms US workers and businesses"—is irrelevant, not helpful, and is mere political criticism of the H-2A program ungrounded in evidence. *See id.* at 18.

Plaintiff admits that data only from the year 2017 was used in Dr. Martin's report, but that this year was sufficient for the limited purpose of his testimony. (Doc. 167 at 3). Plaintiff maintains that Dr. Martin's opinion is necessary to show that Venegas's original statement that he operated no fence construction company is as equally incorrect as his current statement that he did operate such a company but that his H-2A workers never worked over eight hours per day. *See id.* at 3–4. Plaintiff next asserts that Dr. Martin's surveys are limited to states other than Texas because only a handful of states collect such data in a manner permitting extraction of fencing labor costs, and that the data was independently collected and is relied upon by banks. *See id.* at 4. Plaintiff defends Dr. Martin's methodology based upon Venegas's federal tax returns, stating that no expertise is necessary to compare actual to expected labor costs. *Id.* at 5–6.

Plaintiff further argues that Dr. Martin's use of a lower gross income value for Defendants' 2017 income was a conservative assumption which benefited Defendants, and his reduction of labor costs is attributable to Defendants' family members who performed no work. *Id.* at 6. Plaintiff insists that the portions of Dr. Martin's opinion which address legislative history and wage survey practices is proper because they impinge on the viability of the adverse effect wage rate versus the prevailing wage rate as applied to Plaintiff. *Id.* at 1, 7–8). Lastly, Plaintiff claims Dr. Martin's opinion on United States workers and businesses is relevant, assuming the Court allows Dr. Martin's first opinion, because it indicates Defendants' financial motive as part of Plaintiff's RICO claims. *Id.* at 9.

Each opinion contains separate methodologies, as well as distinct conclusions. Therefore, the Court will address each of the three opinions in turn.

*1) Opinion 1*

The first opinion is that, as summarized by Dr. Martin himself, "Venegas almost certainly failed to pay his H-2A workers for all of the hours that they worked." (*See* Doc. 147-2 at 2). The Court finds that Dr. Martin's Opinion 1 is unreliable. As a preliminary matter, Defendants' claim that Dr. Martin use of "almost certainly" in referring to Venegas's alleged failure to pay Plaintiff for all of his working hours somehow makes it less reliable is misguided because Plaintiff asserts and Venegas has failed to rebut that Venegas did not record all of his hours, which, if proven at trial, could explain Dr. Martin's ambivalence. *Id.* at 5. As to the other objections, Defendants' argument that averages, specifically the 51% average between five non-Texas states, is unreliable is inherently weak and should be rejected. *See, e.g.*, *Olivier v. James J. Flanagan Stevedores, Inc.*, No. 96-60773, 1997 U.S. App. LEXIS 43540, at *3 (5th Cir. July 24, 1997) (condoning an expert's use of averages); *Fernandez v. Transp. Designs, Inc.*, No. SA-16-CA-022-OLG, 2017 U.S. Dist. LEXIS 126726, at *6, 2017 WL 2999706, at *2 (W.D. Tex. Apr. 5, 2017).[1]

Regarding the rest of the analysis, however, it is clear that Dr. Martin's Opinion 1 is based on an improper reading of Venegas's 2017 federal tax return, which Dr. Martin is unqualified to present. Plaintiff admits in his response that only 2017 data was utilized for Dr. Martin's report, but characterizes it nonetheless as "sufficient for the carefully limited purpose of his testimony." (Doc. 167 at 3). Dr. Martin, as will be explained below, interprets the 2017 tax return to an extent beyond his own admitted ken. (*See* Doc. 188). In particular, Dr. Martin opines and subsequently excludes

---

1. The Court concludes that Opinion 1, if reliable, would be relevant this matter. Plaintiff argues that Opinion 1 is "necessary to show that [] Venegas's last position [concerning the daily hours of the H-2A workers] is as wrong as his first." (Doc. 167 at 3–4). If this is correct, it might make it more likely that Plaintiff, as one of the H-2A employees purportedly underpaid by Venegas, was also one of those individuals who was underpaid. Opinion 1 at the very least therefore directly relates to Plaintiff's breach of contract claims for underpayment, and Defendants' urgings to the contrary must be rejected. (Doc. 147 at 14).

various figures from the tax return in forming his opinion, all without any basis for doing so. (Docs. 147-1 at 4; 187). This sort of cherry-picking is epitomic of testimony reserved for accountants, tax preparers, financial advisors, and the like. *See, e.g.*, *In re Wyly*, 552 B.R. 338, 364–66 (Bankr. N.D. Tex. 2016). Therefore, Dr. Martin's Opinion 1 is an opinion which he is not qualified to provide. Accordingly, this factor weighs against reliability.

Assuming *arguendo* that Dr. Martin were so qualified, as Defendants emphasize, the 2017 tax return indeed indicates that Venegas had a "cost of labor" of $1,580,842. (Doc. 148-2 at 6). Several times in his report, did Dr. Martin exclude various of Venegas's expenses listed as part of this cost of labor, such as wages paid to family members "who did not assist in fence construction." (Doc. 147-2 at 7). However, as was clarified at the April 8 hearing, some of Dr. Martin's exclusions, such as those for Venegas's family members, were incorrect, since Genesis Venegas Salmon, who was formerly a defendant in this case, participated in the administration and recordkeeping of Venegas's business. (Docs. 147 at 11; 187). Furthermore, Dr. Martin attempted to explain this discrepancy as "suspicious," but could not explain or "prove that [the numbers a]re correct or wrong." (*See* Doc. 147-1 at 4). Specifically, Dr. Martin testified that he could not determine whether the $1,580,842 figure is accurate. *See id.* at 5 ("I don't know if [$1,580,842 figure i]s accurate or not."). To ice this exclusionary cake, Defendants presented testimony at the April 8 hearing as well as an affidavit from John Stokes, Defendant's certified public accountant, on the preparation of the 2017 tax return. (Doc. 147-13). Dr. Martin testified at the April 8 hearing that he assumed some numbers from Mr. Stokes's affidavit were necessarily "duplicated" because he "d[id]n't know what [wa]s behind these particular expense numbers." (Docs. 147-1 at 32; 187). The April 8 hearing confirmed that Dr. Martin's entire analysis as to the $1,580,842 figure and his exclusion of over half of the figure was purely baseless, speculative, arbitrary, chimeric, and unsubstantiated. Without any reasonable explanation behind Dr. Martin's exclusions, the Court sees no reason to believe that Opinion 1, premised on a faulty interpretation of Venegas's 2017 tax returns, is itself well-grounded

7

or its underlying calculations reliable. Accordingly, this factor weighs against reliability and admission.

Additionally, the Court finds that Dr. Martin's Opinion 1 is based on insufficient and inapplicable foundational data. While it may be true that Texas itself does not delineate the particular equipment and material costs in its official reports, this in no way provides additional credence to the data reported by Iowa, Kansas, Nebraska, or any other state. By Dr. Martin's own calculation, the labor/equipment-materials disparity between Iowa and Oklahoma is 31%; the Texas labor-equipment costs very well could also be at either the high end or the low end of this range—as either of the two states' data clearly is—and yet would not necessarily be indicative of Venegas's own comparability to the 51% average. (*See* Doc. 147-2 at 6). Additionally, even if the averages from the other states could conceivably be representative of the Texas labor-equipment costs, the data upon which Dr. Martin relies is far from recent. For example, Nebraska and Virginia's surveys date back to 2002 and 1997, respectively, leaving two or more decades of developments unconsidered. (Doc. 147-2 at 6). Dr. Martin at no point in Opinion 1 explains whether these figures from the turn of the millennium remain consistent until today, let alone whether the agricultural practices in Virginia mimic that of Texas. (*See generally* Doc. 147-2). Therefore, this factor weighs against reliability as well.

The Court further concludes, utilizing *Daubert*'s science-based factors, that Dr. Martin's Opinion 1 is premised on an untested and inherently unreliable methodology. The methodology Dr. Martin utilized for Opinion 1 is as follows: for each state with applicable agricultural extension services data, materials costs are subtracted from the estimate of total costs (which includes labor costs, equipment and other overhead, and profit), to retrieve a proportion of labor and equipment costs to material costs; this proportion is averaged with the other four states. (Doc. 147-2 at 5–6). Dr. Martin concluded that 51% was the average "expected wages" ratio for fencing labor, in that 49% would be expected to be spent on materials. *Id.* at 6–7. Dr. Martin then utilized Venegas's 2017 tax return and siphoned off the income for "shearing" which, as applied to the remaining $3,962,233

worth of income, resulted in an expected $2,020,739 for "labor and equipment costs." *Id.* at 6. Dr. Martin examined Schedule C of the 2017 tax return, and subtracted $894,042 for "actual equipment and other expenses," so as to predict $1,126,697 in "wages to his fence construction workers." *Id.* at 7.

Dr. Martin, having performed the aforementioned other calculations as to Venegas's payments for fence construction labor in 2017, found that the labor costs of $765,144 which Venegas paid are lower than the 51% benchmark, thereby indicating an "almost certain[]" underpayment. *Id.* at 7. Dr. Martin asserted both at the April 8 hearing as well as in his deposition that this methodology has been untested, and is a formulation of his own creation. (*See* Docs. 147-1 at 9; 187). Though this does not cast an incontrovertible shadow of unreliability upon Dr. Martin's reliability, *see, e.g.*, *Lea v. Wyeth LLC*, No. 1:03-CV-001339, 2011 U.S. Dist. LEXIS 155504, at *12–*14, 2011 WL 13193441, at *3 (E.D. Tex. Sept. 16, 2011), it is obvious that the Court is left with no arrows in its judicial quiver to determine whether the methodology itself is reliable. *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988–89 (5th Cir. 1997) (applying *Daubert* to novel methodologies). Dr. Martin's methodology, as novel as it is, has yet to be peer-reviewed or tested by any other labor economist, governmental entity, accounting agency, or otherwise. It subsequently has never been tested or generally accepted in the scientific community, and has no known or potential rate of error. Therefore, these remaining *Daubert* factors bode against reliability.

Accordingly, Opinion 1 must be excluded.

    2) *Opinion 2*

The second opinion is that, as summarized by Dr. Martin himself, "Venegas underpaid H-2A workers by using an incorrect wage rate." (Doc. 147-2 at 8). The Court finds that Dr. Martin is unqualified to provide Opinion 2. The second opinion almost entirely presents either irrelevant background to the H-2A visa program, or inadmissible legal conclusions, or the application of these legal conclusions to Venegas's wage rates.

The same standards for the admission of expert testimony noted above apply here, with an important caveat: an "expert witness is not allowed to opine on legal conclusions that should be drawn from the evidence." *Smith v. City of Bastrop*, No. 1:19-CV-1054-RP, 2021 U.S. Dist. LEXIS 8124, at *13, 2021 WL 148061, at *5 (W.D. Tex. Jan. 15, 2021). Applying Federal Rule 702, the Court finds that Dr. Martin is unable as a matter of law to present Opinion 2 on the subject for which he was employed due to his lack of qualifications. For instance, the Court believes that few would doubt Dr. Martin is qualified as an *agricultural labor economist*, *agricultural extension services expert*, or similar. However, he is not in any conceivable extent qualified as a lawyer, judge, judicial officer, politician, or legal advisor, or similar. Plaintiff so concedes that Dr. Martin is unable to opine on the legal question as to whether contracted fencing work constitutes "agriculture" under H-2A regulations. (Doc. 167 at 1, 7).

Even if Dr. Martin had sufficient experience and knowledge to testify on the H-2A legal requirements, he could not provide legal conclusions in his testimony. The remaining portion of Dr. Martin's opinion essentially encompasses the Department of Labor/US Department of Agriculture's ("DOL") survey calculation of the adverse effect wage rate ("AEWR"), notably that, generally, the AEWR is a higher rate than the prevailing hourly wage rate ("prevailing wage") for H-2A "agricultural" workers, but in Texas specifically, *the prevailing wage* is actually higher for H-2B "fence erectors and mechanics." (Doc. 147-2 at 8–9). According to the opinion, Venegas's business and thus Plaintiff's employment would not be included in that survey, but Venegas nevertheless applied the DOL's AEWR, which would apply to agricultural workers, when the higher of the two rates would have been the prevailing wage. *See id.* at 8.

Dr. Martin's second opinion includes very minimal application of any federal regulation wage rate to Venegas's own pay structure for employees like Plaintiff. Most of the second opinion is dedicated to the legislative history, policy objectives, and legal requirements for the AEWR as opposed to the prevailing wage. These wage requirements for "fence erection" and "fence

10

maintenance" are based upon Dr. Martin's interpretation of federal statutes, regulations, and administrative law judges' decisions; Dr. Martin is indisputably unqualified to opine on these requirements.

Therefore, Opinion 2 must be excluded.

### 3) Opinion 3

The third opinion is that, as summarized by Dr. Martin himself, "Venegas's use of H-2A workers harms US workers and businesses." (Doc. 147-2 at 11). The Court finds that Dr. Martin is also unqualified to provide Opinion 3. The third opinion also does not seem particularly relevant to any of the claims presented in this case, and presents only a generalized policy argument, and would not on its face help the jury understand anything about Plaintiff's RICO or other claims. Because it is undisputed that Dr. Martin, being an agricultural economics expert, is unqualified to testify on matters of legal policy or the law itself, and because the third opinion offers an interpretation of the veracity of Venegas's H-2A applications depending upon the classification of Venegas's workers, the third opinion should be excluded. Additionally, Plaintiff admits that Opinion 3's admission is reliant entirely upon Opinion 1's own admission, which as detailed above is an impossible scenario.

Therefore, Opinion 3 must be excluded.

### 4) Conclusion

Dr. Martin is not qualified to testify as an expert on Venegas's tax returns, federal regulations for H-2A applications, or the policies buttressing the H-2A program. Accordingly, the Court **GRANTS** the Motion to Exclude Dr. Martin. (Doc. 147).

**B. Defendants' Motion to Exclude Expert Opinions of Antonio Rodriguez (Doc. 149)**

Defendants' Motion to Exclude Rodriguez is **GRANTED**. (Doc. 149). Defendants contend that Antonio Rodriguez ("Rodriguez") is neither independent nor qualified as an expert in ranch fencing. (Doc. 149 at 1). Defendants furthermore argue that even if Rodriguez were a ranch fencing expert, his proffered opinions are irrelevant and would be unhelpful to the jury. *Id.* at 2. Defendants

believe Rodriguez is unqualified to be a ranch fencing expert because he is employed by Plaintiff's counsel's firm, and has no consistent, substantial experience in ranch fencing. *Id.* at 5–7. Defendants claim Rodriguez's opinions are unreliable and unsubstantiated due to their being an explanation of his Del Rio-based residential ranching business, for which there is no application to Defendants' much larger business or this case in particular. *Id.* at 8–10.

Plaintiff insists Rodriguez's employment with Plaintiff's counsel's firm is immaterial. (Doc. 168 at 1–2). Plaintiff also engages in an argument of equivalency and claims that because one of Defendants' experts, Cole Hardin, possesses similar traits to Rodriguez, Defendants have implicitly admitted that Rodriguez's testimony would be helpful. *Id.* at 2. Plaintiffs maintain that Rodriguez is able to help the jury understand "how fences are made and how much they cost in materials and labor." (Doc. 168 at 3). Defendants reply that Plaintiff has still not met his burden of proving Rodriguez's opinions are reliable given his minimal experience with ranch fencing. (Doc. 173 at 1).

Here, similar to the court in *Thomas v. City of Cedar Park*, the Court "does not find *Daubert's* science-based factors particularly helpful" in determining the admissibility of Plaintiff's experts and will therefore rely on Federal Rule 702. *See* No. A-07-CA-002-LY, 2008 WL 11416959, at *2 (W.D. Tex. June 3, 2008). Federal Rule 702 "requires that expert testimony meet a certain threshold of reliability in order to be admitted." *Bryan v. Union Pac. R.R. Co.*, No. PE:19-CV-00016-DC-DF, 2020 U.S. Dist. LEXIS 255871, at *6, 2020 WL 10051767, at *3 (W.D. Tex. Jan. 14, 2020), *report and recommendation adopted*, No. P:19-CV-00016-DC, 2020 U.S. Dist. LEXIS 255905, 2020 WL 10051739 (W.D. Tex. Jan. 31, 2020). As previously stated, Federal Rule 702 permits testimony if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Carlson v. Bioremedi Therapeutic Sys.*, 822 F.3d 194, 200 (5th Cir. 2016) (quoting FED. R. EVID. 702).

In this case, the Court finds that Rodriguez is unqualified to testify as an expert on any conceivable aspect of ranch fencing. As a tangential note, it is unclear why Rodriguez's association with Plaintiff's law firm, given that he is Plaintiff's expert, in and of itself makes his opinion unreliable, or otherwise disqualifies him as an expert. *See Brawhaw v. Mariner Health Care, Inc.*, No. 2:04CV322-P-B, 2008 U.S. Dist. LEXIS 37884, at *14, 2008 WL 2004707, at *5 (N.D. Miss. May 8, 2008) (noting that the court's gate-keeping function is not to determine whether the witness has a personal bias for being associated with a plaintiff's law firm). Defendants argue that this fact contradicts Plaintiff's prior disclosure, but this is a minute error if one at all. In any event, the Court does not believe that Rodriguez's employment with Plaintiff's law firm relegates him to a lesser prong of qualification than if he were entirely unassociated from Plaintiff. Equally as trifling, whether Defendants' own expert, Cole Hardin, is equally as un/qualified is an immaterial equivalence. Additionally, the proportional difference between Defendants' own yearly revenue and that of Rodriguez's likely would not be relevant as to whether Rodriguez is qualified. For example, if Rodriguez were an expert due to his having 100% more ranch fencing revenue than an individual owner defendant who just started his business in the last week of a given year, surely this legal conclusion would not be changed if the defendant were instead the world's largest ranch fencing supplier.

Nevertheless, Defendants' other substantive arguments against Rodriguez's qualifications are fairly strong and have gone largely unrebutted by Plaintiff. If Rodriguez is to be offered for the purpose of demonstrating "how fences are made and how much they cost in materials and labor," Rodriguez cannot do so as an expert. (Docs. 149-2 at 1; 168 at 3). First, and most importantly, Rodriguez's proffered opinion is not based upon sufficient facts or data. Rodriguez explained in his deposition that the total amount of ranch fencing conducted in 2019—the year in which Rodriguez generated the most revenue—would come to less than two-thirds of a mile of fencing. (Docs. 149-1 at 11 ($10,000 worth of revenue in 2020); 149-2 at 2 ($15,312 per mile)).

Rodriguez does not seem to be qualified as an expert in ranch fencing, since he has weaned off of ranch fencing and in both 2020 and 2021, the year before his deposition, he did not perform any ranch fencing. (Doc. 149-1 at 10). While of course no specific distance of ranch fencing is required for an individual to become an expert in the field, the arguments against Rodriguez's apparent lack of substantial experience are concerning and place his qualifications in the spotlight. In 2019, for example, Rodriguez generated enough revenue, about $10,000, to account for only 2/3 of a mile of ranch fencing. *Id.* at 11.

Furthermore, Rodriguez's opinion discusses only how he has generally laid ranch fencing in the limited capacity in which he has performed such acts, as well as the pay rates for his employees. (Doc. 149-2). The conclusions an expert has reached are "not entirely distinct" from the methodology the expert has applied. *Gen. Elec. v. Joiner*, 522 U.S. 136, 146 (1997). In other words, the Court can examine whether "there is simply too great an analytical gap between the data and the opinion proffered." *Id.* The expert must, therefore, in line with *Daubert* and Federal Rule 702's requirements, "adequately . . . connect the dots between the . . . information and his conclusion." *Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 749 (5th Cir. 2018). Absent such a logical bridge, the Court can exclude the conclusory portions of the expert testimony as unreliable, thereby failing to overcome the burden presented by Federal Rule 702. *See Boyd v. State Farm Ins.*, 158 F.3d 326, 331 (5th Cir. 1998); *see Bean Meridian, L.L.C. v. Suzuki Motor Corp.*, 841 F.3d 365, 370–71 (5th Cir. 2016) (concluding that courts do not abuse their discretion "by excluding th[e] . . . conclusory opinion").

Rodriguez's opinion merely recounts past experiences with ranch fencing, and expresses no principles or methods by which Rodriguez adjusts the pay rates for his workers, when he decides to perform for or against a given fencing job, or any other metric by which the Court could measure his opinion's reliability. (Doc. 149-2). This is all done by memory, as Rodriguez notes and Defendants argue, and not even via refresh or examination of records documenting Rodriguez's expenses or labor hours. (*See* Doc. 149-1 at 9). With infinitesimal support behind Rodriguez's reliability as an

14

expert in ranch fencing, and plenty of reasons to question Rodriguez's own sufficiency of experience, the Court cannot find that Rodriguez's opinion was premised upon reliable principles and methods. It is still to be discovered how, given Rodriguez's rather minimal experience and failure to explain any principled methods or standards for his business calculations, his opinion could have been the product of reliable methods or principles. Consequently, it is an equally ambivalent feeling as to whether Rodriguez has applied these principles and methods reliably.

Therefore, Rodriguez is not qualified to testify as an expert on the creation of ranch fences or the costs of materials and labor for ranch fencing. Accordingly, the Court **GRANTS** the Motion to Exclude Rodriguez. (Doc. 149).

### III.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion to Exclude Dr. Martin. (Doc. 147).

Furthermore, the Court **GRANTS** Defendants' Motion to Exclude Rodriguez. (Doc. 149).

It is so **ORDERED**.

SIGNED this 19th day of April, 2022.

DAVID B. FANNIN
UNITED STATES MAGISTRATE JUDGE